UNITED STATES GYPSUM CO. v. MACKEY WALL PLASTER CO.

(Circuit Court of Appeals, Ninth Circuit. June 10, 1918. Rehearing Denied October 14, 1918.)

No. 3111.

1. LANDLORD AND TENANT ⬤➞92(1)—OPTION TO PURCHASE—SUFFICIENCY OF NOTICE.

Under a lease of real estate, with an option to the lessee to buy, expressly providing that, on its failure to notify lessor to the contrary in writing 60 days before expiration of the term, "it will thereby become obligated to make such purchase and pay the consideration," a letter written by lessee some time before, stating that it expected to give formal notice of its election not to purchase, was not equivalent to such notice.

2. VENDOR AND PURCHASER ⬤➞18(3)—OPTION CONTRACT—NOTICE OF ELECTION.

A notice of election under an option to purchase real estate to bind the party to whom it is given must be such as to bind the party giving it.

3. EQUITY ⬤➞385—PROOF AFTER CLOSE OF HEARING.

In a suit by the vendor for specific enforcement of a contract for the sale of a leasehold interest in land, where the lease prohibited its as-

⬤➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

signment, except with written consent of the lessor, the court had discretion, after the close of the hearing, to permit complainant to supply proof that such consent had been obtained.

4. COURTS ⊂⊃350—EQUITY RULES—DEPOSITIONS—TIME FOR TAKING.

Equity rule 47 (198 Fed. xxxi, 115 C. C. A. xxxi), which fixes the time for taking depositions, "unless otherwise ordered by the court or judge for good cause shown," does not limit the power of the court by order to permit the taking of depositions at any time.

Appeal from the District Court of the United States for the District of Montana; Geo. M. Bourquin, Judge.

Suit in equity by the Mackey Wall·Plaster Company against the United States Gypsum Company. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 244 Fed. 275.

This is a suit for specific performance of an option contract. On June 15, 1909, the Mackey Wall Plaster Company, appellee, made a lease of certain premises to the United States Gypsum Company, appellant. The lease ran a year, with an option of purchase of all the property and rights described in the contract under certain conditions of payment. The property involved consisted of all the right, title, interest, and estate of the Plaster Company in and to a certain tract of land in Riceville, Mont., and a described tract near Great Falls, the latter tract having been acquired by the Plaster Company through an indenture of lease theretofore entered into between the Great Northern Railway Company and the Plaster Company on June 22, 1908, and subject to all of the terms and conditions therein set forth, a copy of which indenture of lease being attached to the contract of lease. By agreement on July 1, 1910, the lease and option were extended for five years, and thereafter, by an agreement dated July 6, 1915, the agreements of June 15, 1909, and July 1, 1910, were extended for the further period of one year from July 6, 1915. In the last extension the manner of the exercise of the option was provided for as follows: "Now, therefore, in consideration of the premises, * * * it is agreed that the said instruments dated June 15, 1909, and July 1, 1910, be in all things and respects extended, renewed, and made valid and of full force and effect for the further period of one (1) year from and after the date hereof. And as a further consideration for said extension lessee agrees that, if it shall determine that it will not avail itself of the option in said several agreements contained to purchase the property of the lessor, Mackey Wall Plaster Company, upon the terms and conditions in said several instruments provided, it will at least sixty (60) days prior to the first day of July, 1916, give the lessors in writing a notice to the effect that lessee will not purchase the said property under and by virtue of said agreements; and it is agreed that if lessee shall neglect or fail to give such notice, at least sixty days before the first day of July, 1916, it will thereby become obligated to make such purchase and pay the consideration in said instruments provided to be paid in the event of purchase. * * *" It is admitted that the Gypsum Company took possession of the property leased and remained in the enjoyment thereof during the term of the lease; that it paid all rents and otherwise lived up to the conditions of the contract and kept in possession thereof during the extensions heretofore referred to.

The appellant denied that it had elected to purchase the premises, and alleged that by letter dated April 19, 1916, it had notified appellee of its intention not to purchase. The Mackey Company, on the other hand, took the position that the option was exercised by the Gypsum Company by failure to give the notice referred to in the agreement of July 6, 1915, and accordingly, upon July 5, 1916, sent to the Gypsum Company deeds of conveyance to the property described in the agreement; but these deeds were returned by the Gypsum Company with the statement that it had not purchased the property. The Gypsum Company, appellant, also contends that the giving of

the notice of nonacceptance was waived by the conduct of the Mackey Company, or that it had estopped itself to assert that such notice was never given, and further that, even if the option had been exercised specific performance of the agreement should not be decreed for the reason that the Mackey Company could not give satisfactory title to a part of the premises agreed to be conveyed inasmuch as a part of such premises were held under a lease from the Great Northern Railway Company to the Mackey Company, which lease contained the usual provision against assignment or subletting without the consent of the lessor, and because no satisfactory consent had been made by the Great Northern Railway Company.

The court decreed specific performance. The Gypsum Company appealed.

Scott, Bancroft, Martin & Stephens, of Chicago, Ill., Edwin L. Norris, of Dillon, Mont., and George E. Hurd, of Great Falls, Mont. (John E. MacLeish, of Chicago, Ill., of counsel), for appellant.

Cooper, Stephenson & Hoover, Ransom Cooper, and W. H. Hoover, all of Great Falls, Mont., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] Examination of the option contained in the agreement of July 6, 1915, discloses that the burden is put upon the Gypsum Company to give to the Mackey Company a notice in writing at least 60 days prior to July 1, 1916, should the Gypsum Company not avail itself of the option to purchase, and that if the Gypsum Company should neglect or fail to give such notice at least 60 days before July 1, 1916, it would thereby become obligated to make the purchase. It was evidently understood by the parties to the agreement that the Gypsum Company well understood the terms of the contract, because in a letter of July 14, 1915, addressed to the Gypsum Company, the Mackey Company notified the Gypsum Company that while it considered the terms of the supplemental contract to be "clear and unambiguous," yet to the end that there might be no question as to the terms the Mackey Company wrote its "construction" of the contract, wherein, after referring to the previous agreements and to the fact that the only change was that concerning election not to purchase, it used this language:

"The only change therein is that in case you fail to notify us of your election not to purchase on or before 60 days prior to the first day of July, 1916, then you shall be held to have elected to exercise the option of purchase contained in said contracts, and we shall thereupon become obligated to convey to you in manner as set forth in said contract of June 15, 1909, all of the properties," etc. "* * * The notice to be given under said contract of July 6, 1915, shall be sufficient if deposited in the United States mails, postage prepaid, and inclosed in an envelope addressed to either of us at the city of Great Falls, county of Cascade, state of Montana."

Upon April 19, 1916, the manager of the Gypsum Company wrote to Mackey, the president of the Mackey Company, at Minneapolis, the following letter:

"Dear Sir: On May 5th our option to purchase your mill property at Great Falls expires. I am writing you in advance of that date to inform you that conditions in Montana at this time are such that it will be necessary for us to cancel our arrangement with you at the time of its expiration, which is July 5th. We have had men looking for gypsum almost constantly since our last meeting, and so far our efforts have been fruitless. If you care to come

down and talk the matter over, we will be glad to have you do so. Expect to give you formal notice on May 5th that we do not care to purchase your property."

Thereafter Mackey went to Chicago, and about April 28th had a conference with the manager of the Gypsum Company. Possibilities of continued lease were spoken of, but according to the testimony of Mackey the manager of the Gypsum Company told him that on May 4th or 5th formal notice declining to purchase would be sent, to which Mackey replied that whatever they decided to do should be sent to him care Mr. Cooper at Great Falls.

[2] It is contended that the letter of the 19th was sufficient notice, and that there could be no doubt of its meaning after the conferences between the officers of the Gypsum Company and Mackey held about April 28, 1916. But after a careful reading of the whole evidence we must uphold the finding of the District Court to the effect that there was nothing in the conference had about that time which could fairly be construed to be a notice by the Gypsum Company to Mackey that the option was not to be exercised. It is very plain that the letter of April 19th was not the notice required under the terms of the contract. When the Gypsum Company wrote that it expected to give formal notice on May 5th that it did not care to purchase the property, evidently the writer of the letter well understood the necessity for formal notice as required by the terms of the agreement, and was careful not to give such a notice, which, of course, would have been of binding force. The effect of the letter was to let the Gypsum Company hold on without decision and still notify Mackey that it might elect not to buy. Mackey's testimony was that by the letter "they had not said anything, and they were left in a position to do or not do as they might later on determine."

Was there a waiver of the need of further notice after the conference of April 28th, and did Mackey by his conduct estop himself from asserting that he was entitled to any further notice? It is true that in the conversations between Mackey and the agents of the Gypsum Company in Chicago there was talk of another extension of the lease, and Mackey spoke of personally examining the properties, and was given a letter by the Gypsum Company to its superintendent in Montana which would enable Mackey to inspect the property for himself; but no definite proposition of lease was made, and no agreement of any kind was entered into, and Mackey's evidence is that, when a proposition of continuing the lease was discussed, he told Mr. Knode of the Gypsum Company to put in writing whatever they had in mind and send it to Mr. Cooper. He said that when they were discussing a lease he had no means of knowing what they had in mind, and that when he left he was not aware that they had decided not to buy; nor did he visit the properties and present his letter of introduction.

It would extend this opinion too far to quote at length from the testimony. We have gone over it very carefully, and are unable to infer that Mackey had reason to believe that no formal notice would be sent, nor do we perceive that Mackey by his statements or conduct induced the Gypsum Company representatives to act upon the belief that he waived or would waive the notice to which his company was entitled.

It is said that equity would not specifically enforce the contract for lack of mutuality of remedy under the contract. This contention is based upon this ground: By the contract of June 15, 1909, the Mackey Company agreed to convey to the Gypsum Company a certain leasehold interest acquired by the Mackey Company from the Great Northern Railway Company in June, 1908. In the lease we find this provision:

"The lessee shall not and will not assign this indenture, nor permit any other person or corporation to use or occupy any part of the premises hereby demised without first having obtained the written consent of the lessor, its successors or assigns, thereto."

Appellant's argument is that equity could not compel the Mackey Company to obtain the written consent of the Railway Company to the assignment of the lease of June, 1908, to the Gypsum Company; that inasmuch as the Railway Company was not a party to the contract of June, 1909, between the Mackey Company and the Gypsum Company, the court would have no jurisdiction to require the Railway Company to do anything concerning the leasehold in the action between the two companies here involved. The force of this contention is met by the fact that the Gypsum Company went into possession and continued to occupy the property affected by the lease from the Railway Company for a number of years before this suit was instituted, and throughout the period paid to the Railway Company the rentals as they became due under the lease, copy of which was attached to the agreement between the Gypsum Company and the Mackey Company; and furthermore by the evidence that just before the last two named companies made their agreement in June, 1909, counsel for the Gypsum Company prepared the consent of the Railway Company to the subleasing of the property and the subsequent assignment thereof and forwarded the written consent in duplicate to the general traffic manager of the Railway Company at St. Paul, with a letter asking immediate execution by the Railway Company and the mailing of the same to the president of the Gypsum Company and to the Mackey Company. It also appears that the traffic manager of the Railway Company, by letter to counsel at Great Falls dated June 12, 1909, returned a copy of the written consent, and stated that he had sent a copy to the president of the Gypsum Company at Chicago. Under the circumstances the proof was clear that consent was given by the Railway Company before the original contract was executed, and there was no want of mutuality of remedy.

It is said, however, that upon the trial of the case the Mackey Company made no showing that it had procured and delivered to the Gypsum Company the heretofore referred to written consent of the Railway Company to an assignment of the lease. This is a correct statement, and when the District Judge announced his opinion he held that specific performance of the contract would not be decreed without evidence of the written consent of the Railway Company, and he directed that if within 30 days the Mackey Company obtained the consent decree would be made in its favor; otherwise, decree would be for de-

fendant. But within the 30 days the consent heretofore referred to was deposited in court. Defendant then objected to the sufficiency of the consent, whereupon the Mackey Company was given 30 days to show that the consent was binding on the Railway Company. Depositions were taken and read, oral testimony was heard by the court, and decree for specific performance followed.

[3] We are of opinion that the court did not go beyond its power in requiring the Mackey Company to prove the fact of consent of the Railway Company as a condition to the making of the decree. Dresel v. Jordan, 104 Mass. 407; Van Riper v. Wickersham, 77 N. J. Eq. 232, 76 Atl. 1020, 30 L. R. A. (N. S.) 25, Ann. Cas. 1912A, 319; Hepburn v. Dunlap, 1 Wheat. 179–194, 4 L. Ed. 65; Kentucky Distilleries & Warehouse Co. v. Blanton, 149 Fed. 31, 80 C. C. A. 343.

[4] The next point made by appellants is that the instrument of consent by the Railway Company was fatally defective, because it was not dated, had no corporate seal thereon, and was not shown to have been signed by authority on behalf of the company. To meet these points depositions were offered. Counsel for the Gypsum Company objected upon the ground that the depositions were not taken in compliance with rule 47, Equity Rules of the Supreme Court (198 Fed. xxxi, 115 C. C. A. xxxi), in that the court, after considering the affidavit, permitted the depositions to be taken upon 5 days' notice of the time and place of taking the same, whereas the rule cited contemplates for plaintiff's depositions 60 days from the time the cause is at issue. The rule, however, expressly provides that depositions taken under a statute or order of court shall be taken and filed as prescribed unless otherwise ordered by the court or judge for good cause shown.

The court acted upon cause shown which was satisfactory, and we find no substantial reason for disturbing its action in the matter. The depositions need not be set forth. Suffice it to say that they satisfactorily established the execution of the consent by one of the vice presidents of the Railway Company in June, 1909, prior to the execution of the agreement between the parties to the present litigation. The objection that it was not shown that the records of the Railway Company were properly kept is not well taken, considering the testimony of the secretary and treasurer, who was the custodian of the earlier, as well as the present, records of the corporation, and the by-laws which were put in evidence. Union Trust Co. v. Dickinson, 30 Cal. App. 91, 157 Pac. 615; Gold Glen Mining Co. v. Dennis, 21 Colo. App. 284, 121 Pac. 677.

We find no error in the record, and affirm the decree.