UNITED STATES GYPSUM CO., Appellant, v. MACKEY WALL PLASTER CO. et al., Respondents.

(No. 4,665.)

(Submitted March 14, 1921. Decided May 23, 1921.)

[199 Pac. 249.]

*Equity—Corporations—Capital Stock—Pledges—Sale—Denial of Opportunity to Offset Claim—Redemption—Receivers— Taxation of Costs.*

Appeal—Receivers—Taxation of Costs—Error—Review.
    1. Error incident to the taxation of costs in a receivership is reviewable on appeal from the judgment.
Corporations—Corporate Funds—Payment of Personal Obligations from— When not Illegal.
    2. Where the entire capital stock of a corporation was owned by two persons, the corporation functioning only for their benefit, they could properly use corporate funds to pay their personal obligations.
Same—Capital Stock—Pledges—Sale Without Opportunity in Pledgor to Offset Claim—Redemption—When Proper—Equity.
    3. Defendant company had leased its property to plaintiff with privilege of purchasing it for $50,000, $15,000 of which was due at the time a note for $8,000 made by two individual defendants owning all its capital stock to plaintiff fell due, which note had been secured by a pledge of capital stock of defendant company of the value of $19,000, the pledge agreement providing that upon failure to pay the note at maturity, the pledgee could sell the stock upon five days' notice and without advertising it for sale. Before due date of the note, the two individual defendants authorized plaintiff to deduct the amount due on the note from the $15,000 due defendant company. This plaintiff refused to do and sold the stock to itself for $99. *Held,* in an action by plaintiff to have itself judicially determined a stockholder in defendant company, that in view of the unfair and unconscionable conduct of plaintiff by which the two individual defendants were deprived of an opportunity to offset their claim against that due it from plaintiff, the district court, sitting in equity, properly decreed that the sale of the stock should be set aside and the individual defendants permitted to redeem the stock with moneys deposited in court for that purpose. (Mr. Justice Holloway dissenting.)
Receivers—Costs—To Whom Taxable.
    4. Costs of a receivership are properly taxable against the party whose wrongful acts made his appointment necessary and at whose instance he was appointed, where no exceptional facts appear which require the court, in the exercise of its discretion, to tax them against the party in whose favor the equities were found.

*Appeals from District Court, Cascade County; H. H. Ewing, Judge.*

Action by the United States Gypsum Company, a corporation, against the Mackey Wall Plaster Company, a corporation, and others. From a judgment for defendants, and an order overruling motion for new trial, plaintiff appeals. Affirmed.

*Messrs. Scott, Bancroft, Martin & Stephens* and *Messrs. Norris, Hurd & Rhodes,* for Appellant, submitted a brief; *Mr. John E. MacLeish* and *Mr. Leland K. Neeves,* of Counsel. *Mr. Edwin L. Norris* argued the cause orally.

The offer of the Mackeys and the Mackey Company to apply the amount due on the Mackey note upon the purchase price of the Mackey properties under the option contract was not a payment of the note or a tender of payment, and it would not have operated as such even had the said purchase price admittedly been due.

From the beginning of the controversy between appellant and respondents it has been respondents' idea that the Mackeys had the legal right to compel appellant to accept payment of the personal indebtedness of the Mackeys to it by applying the indebtedness to or setting it off against the claim of the Mackey Company against appellant for the purchase price of the Mackey properties under the lease and option contract, and even upon the hearing in the court below respondent Cooper testified that that was still his idea. In the first place, had there been no controversy between appellant and respondents, the Mackey indebtedness could not be paid in the manner in question in the absence of an express agreement to that effect.

"Cross-demands existing between parties cannot operate or be treated as payment with regard to each other without the express assent of both parties." (22 Am. & Eng. Ency. of Law, 2d ed., 526.) The debtor cannot make a creditor a forced purchaser of the property or compel him to exchange his obligation for the property transferred. (*Borland* v. *Nevada etc. Bank,* 99 Cal. 89, 37 Am. St. Rep. 32, 33 Pac. 737; 8 C. J. 574; 30 Cyc. 1187; *Stanwood* v. *Smith,* 3 Ill.

App. 647; *Post* v. *Carmalt,* 2 Watts & S. (Pa.) 70, 37 Am.
Dec. 484; *McCurdy* v. *Middleton,* 82 Ala. 131, 2 South. 721.)

In *Kennedy* v. *Davisson,* 46 W. Va. 433, 33 S. E. 291,
a debtor attempted to prevent the enforcement of certain liens
on the ground that the creditor was his debtor. It was held
that the debtor had no right to prevent his creditor from
enforcing the liens. The court said: "A setoff is a definite
demand, the subject of the cross-action, not a payment." In
the same way respondents claim that appellant could not en-
force its lien upon the pledged stock because of the alleged
cross-demand of the Mackey Company or the Mackeys against
appellant.

The foregoing rule applies equally to debts payment of
which is otherwise secured. In the same way a cross-demand
or setoff is neither payment nor tender of payment. The
usual rules pertaining to tender and payment apply to debts
secured by pledge. (31 Cyc., p. 582; 22 Am. & Eng. Ency. of
Law, 2d ed., pp. 879, 880.)

The offer of the Mackey Company to apply the Mackeys' in-
debtedness upon its claim against appellant was a mere offer,
in no way binding upon appellant and in no way one which
appellant was obliged to accept. Its refusal to accept the
offer for any reason sufficient to itself could not in the slight-
est affect its rights under its contract with the Mackeys.

Another good reason exists for the refusal to comply with
the Mackeys' demand. It is the law, as we understand it,
that officers of a corporation cannot lawfully pay their per-
sonal indebtedness with corporate funds, and in many cases
payments of that kind have been recovered from the creditor.
(See *Anderson* v. *Kissam,* 35 Fed. 699; *Chrystie* v. *Foster,* 61
Fed. 551, 9 C. C. A. 606; *Claflin* v. *Farmers' etc. Bank,* 25
N. Y. 293; *Moores* v. *Citizens' Nat. Bank,* 15 Fed. 141; *Ger-
mania Safety Vault & Trust Co.,* v. *Boynton,* 71 Fed. 797,
19 C. C. A. 118; *O'Bannon* v. *Moerschel* (Mo. App.), 222
S. W. 1035; Fletcher, Corp. 2512.)

The sale of the stock was properly had at Chicago. The contract does not in terms prescribe the place of sale, and as we understand it is not customary for such contracts so to prescribe. (*Thornton* v. *Martin,* 116 Ga. 115, 42 S. E. 348; *Morris & Whitehead* v. *East Side R. Co.,* 104 Fed. 409, 43 C. C..A. 605; *Donohoe* v. *Gamble,* 38 Cal. 340, 99 Am. Dec. 399.)

The sale as made was fully authorized by contract. No advertisement of the sale was necessary. Respondents say that the sale of July 22, 1916, was invalid; that the sale should have been "a sale at public auction after due notice to the public." It is no doubt true that in the absence of an agreement to the contrary the pledgee must sell at public sale, and, according to some of the authorities, only after notice to the public. It is entirely competent, however, for the parties to vary the method of sale as fixed by the general law, and in such case the special agreement will control. (Colebrook on Collateral Securities, sec. 86; *McDowell* v. *Chicago Steel Works,* 124 Ill. 491, 7 Am. St. Rep. 381, 16 N. E. 854; *Peacock* v. *Phillips,* 247 Ill. 467, 32 L. R. A. (n. s.) 42, 93 N. E. 415; *Bryson* v. *Rayner,* 25 Md. 424, 90 Am. Dec. 69.)

The appellant in selling out the collateral acted in good faith and with reasonable diligence, and the sale was valid. It is appellant's contention that in selling out the pledged stock and becoming the purchaser thereof in the manner shown by this record, it but exercised a right given it by its contract with the Mackeys, and that "bad faith" and "lack of diligence" cannot be predicated on that fact alone. The exercise of a contract right is not, and cannot be of itself, fraud. (*In re Mertens,* 144 Fed. 818, 75 C. C. A. 548; *Turner* v. *Metropolitan Trust Co.,* 207 Fed. 495, 25 C. C. A. 157; *Leonard* v. *Greer,* 139 Mass. 31, 229 N. E. 215.)

The contract in the case at bar expressly waived the necessity of notice to the public in the event of the sale. Appellant was authorized to sell the collateral upon five days' notice to the Mackeys "without advertising the same or demanding

payment thereof, or giving any further notice.'' The cases relied upon by respondents, even if they go to the extent claimed, have no application. If the appellant might sell without notice to the public, and without any duty upon it to procure bidders in the first instance, it is idle to claim that it could not lawfully make a sale if it happened to be the only bidder present. (*Turner* v. *Metropolitan Trust Co.,* 207 Fed. 495, 125 C. C. A. 157.) The same may be said as to the sale taking place in Chicago, for a sale there was authorized. In *Winchester Rock etc. Co.* v. *Murdough,* 233 Mass. 50, 123 N. E. 345, a similar contention was made and denied. It was said: ''The place of sale was not specified in the agreement and that it was not in Boston cannot be said of itself to be conclusive of bad faith or want of prudence.''

It is the law, as we understand it, that a pledgee has a right to sell out the collateral upon default in the payment of the principal obligation. (22 Am. & Eng. Ency. of Law, 2d ed., 885; 31 Cyc. 871; *MacFarland* v. *Liberty Nat. Bank,* 166 N. Y. Supp. 393; *Franklin Bank* v. *Newcombe,* 14 Misc. Rep. 597, 37 N. Y. Supp. 271.)

The authorities sustain our proposition that the sale was not in any way merely colorable, but was a *bona fide* attempt by appellant to liquidate the Mackey indebtedness to such extent as might be possible through a sale. (*Morris & Whitehead* v. *East Side R. R. Co.,* 104 Fed. 409, 43 C. C. A. 605.)

Mere inadequacy of price is not of itself sufficient to affect the validity of the sale. (*Learned* v. *Geer, supra; Farmers' Nat. Bank* v. *Venner,* 192 Mass. 531, 7 Ann. Cas. 690, 78 N. E. 540; *Winchester etc. Brick Co.* v. *Murdough,* 233 Mass. 50, 123 N. E. 325), and our contention here is that the price paid was not inadequate. (*Manning* v. *Shriver,* 79 Md. 41, 28 Atl. 899; *Montgomery Bank & Trust Co.* v. *Jones,* 182 App. Div. 252, 169 N. Y. Supp. 478.)

*Messrs. Cooper, Stephenson & Hoover,* for Respondent, sub-
mitted a brief; *Mr. Sam Stephenson* argued the cause orally.

The sale contemplated in this contract was a sale at public
auction. There is no provision for a private sale, and the only
other kind of sale of stock, or other personal property, which
a pledgee can lawfully make in disposing of pledged property,
is the sale at public auction.

Such a sale must be held in a public place, after notice to
the public which is reasonably calculated to attract bidders,
and the sale itself must be conducted as a public sale in
the manner customary for sales at public auction. (31 Cyc.
878; 21 R. C. L. 691.) The waiver of notice, in language
identical with or similar to the language in the pledge agree-
ment in the present case, was held not to waive public notice
but only to waive notice to the pledgor in the following cases:
*Laclede Nat. Bank* v. *Richardson,* 156 Mo. 270, 79 Am. St.
Rep. 528, 56 S. W. 1177; *Tennant* v. *Union Central Life Ins.
Co.,* 133 Mo. App. 345, 112 S. W. 754; *Nagel* v. *Ham, Years-
ley & Ryrie,* 88 Wash. 99, 152 Pac. 520.

The sale is invalid because the pledgee failed to exercise
reasonable skill and diligence in order to get the value of the
property, and on account of bad faith. (*Fitzgerald* v. *Blocher,*
32 Ark. 742, 29 Am. Rep. 6.)

It will not aid the plaintiff to say that it has complied with
the terms of the pledge agreement, and that its obligation
ceases with such compliance. The cases cited below are all
cases where the power was exercised in compliance with the
terms, but where the obligation imposed by law upon the
pledgee to so exercise the power as to obtain the best possible
price required some other and further acts without which its
sale is invalid. (*Montague* v. *Dawes,* 14 Allen, 369; *Drinnan*
v. *Nichols,* 115 Mass. 353; *Clark* v. *Simmons,* 150 Mass. 357, 23
N. E. 108; *Foote* v. *Utah Commercial & Sav. Bank,* 17 Utah,
283, 54 Pac. 104; *Muhlenberg* v. *City of Tacoma,* 25 Wash. 36, 64
Pac. 925.) If the plaintiff had really been desirous of obtaining

the full value of this stock, in the first place it would have sold this stock at Great Falls, Montana. (*Ginsburg* v. *Downs Co.,* 165 Mass. 467, 52 Am. St. Rep. 525, 43 N. E. 195.) A pledgee's sale must have something more than mere form in order to endow it with the sanctity of legality. It must be conducted under such conditions as to afford reasonable assurance that a price will be obtained fairly commensurate with the value of the thing sold.

Since the two Mackeys owned all of the shares of stock of the Mackey Wall Plaster Company except one share, which the evidence shows was also at their disposal and in accord with their wishes, they were the equitable owners, by virtue of such stock, of the debt which appellant owed to the Mackey Wall Plaster Company as the purchase price of the Mackey properties, and equitably they were entitled to have that debt paid in manner and form as they sought to have it, for courts of equity are endowed with the power, when its use is necessary, to look through the envelope of corporate entity to the stockholders themselves and protect them from spoliation at the hands of greed. This is held in the case of *Camp* v. *Gress* by the United States supreme court, wherein the court approved of a charge made by the trial court to the effect that the holders of the corporate stock were the equitable owners of the property represented by the stock. (See *Camp* v. *Gress,* 250 U. S. 308, 63 L. Ed. 997.)

MR. JUSTICE REYNOLDS delivered the opinion of the court.

United States Gypsum Company, a corporation, commenced action against defendants in order to have it judicially determined that it is a stockholder in the Mackey Wall Plaster Company, a corporation, and that the Mackey Company became and was dissolved. Complaint prayed that the present trustees, acting by virtue of the statute, be removed and other persons be appointed in their stead; that the affairs of the

company be wound up and its property and assets distributed among those entitled thereto, including plaintiff. Plaintiff also asked for the appointment of a receiver to take charge of the property and assets of the company pending final determination of the suit, which receiver was appointed. Judgment was entered in favor of defendants. Motion for new trial was made and overruled. Appeals have been taken from the judgment, the order overruling motion for new trial, and from order denying motion of plaintiff to strike from the memorandum of costs the compensation and expenses of the receiver. [1] The appeal from the latter order is superfluous, as any error in taxation of costs is reviewable on appeal from the judgment.

Upon the fifteenth day of June, 1909, the Mackey Company possessed certain gypsum mining properties and a mill at or near Great Falls. Upon that date it leased to plaintiff for one year all its properties at a rental of $3,000. The lease provided that it might be renewed for a further period of five years at the option of plaintiff, and contained a provision giving plaintiff the privilege of purchasing the leased properties for $50,000 of which $15,000 was to be paid in cash and the balance in notes to mature at fixed intervals. On July 1, 1910, the lease was renewed for a further period of five years. On July 6, 1915, another agreement was made extending the lease for an additional year upon the same terms as before, except that the option feature of the agreement was modified whereby it was provided that plaintiff should purchase the premises for $50,000 upon terms above mentioned, unless plaintiff gave to the Mackey Company at least sixty days' written notice prior to July 1, 1916, that it would not purchase the same. The property so leased constituted all of the properties of the Mackey Company. A. D. Mackey and Myra Post Mackey, his wife, were the owners of all of the capital stock of the Mackey Company, but one share was held in the name of Ransom Cooper and one share in the name of Margaret

Innes. Nothing was paid by Margaret Innes and Ransom Cooper for the stock held by them respectively, such stock being issued to them presumably for the purpose of maintaining the organization.

On the nineteenth day of April, 1916, O. M. Knode, then manager of the gypsum company, wrote to A. D. Mackey, informing him: "That conditions in Montana at this time are such that it will be necessary for us to cancel our arrangement with you at the time of its expiration, which is July 5." In the same letter he stated that the gypsum company would give formal notice of its intention not to purchase the plant upon the fifth day of May. No further written notice, however, was ever given prior to the sixty days' limit. On the 14th of July, 1915, A. D. Mackey and Myra Post Mackey made a loan of $8,000 of the gypsum company and assigned to the latter 198 shares of the capital stock of the Mackey Company as security for payment of the loan. The note evidencing the loan contained the pledge agreement reading as follows:

"$8,000.                                    July 14, 1915.

"On or before one year after date, for value received, we promise to pay to the order of the United States Gypsum Company the sum of eight thousand dollars at the office of the United States Gypsum Company, in Chicago, Illinois, with interest at the rate of six per cent per annum after July 14, 1915, and we have deposited with the said United States Gypsum Company as collateral security one hundred ninety-eight (198) shares of the capital stock of the Mackey Wall Plaster Company, a Montana corporation, which we hereby give the United States Gypsum Company, its agent or assignees, authority to sell, or any part thereof, on the maturity of this note, or at any time thereafter, upon first giving to us five days' notice in writing of the intention to sell said securities, such notice to be given by depositing the same in the United States mails addressed to us at the city of Great Falls, county of Cascade, state of Montana; that after such notice shall have

been given, and at the end of the time therein stated, the said United States Gypsum Company, its agents or assignees, without advertising the same or demanding payment thereof, or giving any further notice, may sell said collateral or any part thereof, and apply so much of the proceeds thereof to the payment of this note as may be necessary to pay the same, with all interest due thereon, and also to the payment of all expenses attending the sale of said collateral, including attorneys' fees, and in case the proceeds of the sale of said collateral shall not cover the principal, interest and expenses, as aforesaid, we promise to pay the deficiency forthwith after such sale. And at any sale of said collaterals, or any part thereof, made by virtue hereof, it shall be optional with the legal owner or holder of this note to bid for and purchase said collaterals or any part thereof.''

On the fifth day of July, 1916, the Mackey Company, by A. D. Mackey, assuming that the gypsum company had elected to purchase the plant, wrote to the latter company forwarding a deed, fully executed, conveying the Mackey properties to plaintiff and forwarding an assignment of all the stock of the Mackey Company except the 198 shares above mentioned, then in the possession of the gypsum company; the contract giving the gypsum company the option of taking either the property or the stock. In this letter it was expressly stated that plaintiff should deduct the amount of the indebtedness of A. D. Mackey and Myra Post Mackey due plaintiff upon their note, from the cash payment of $15,000 due on purchase price. The deed and assignment were returned by plaintiff, with letter under date of July 11, 1916, in which plaintiff denied any obligation to purchase the property, made reference to the note of A. D. Mackey and Myra Post Mackey, and stated that payment of same would be expected at maturity. On the fifteenth day of July, 1916, being the day following the maturity of the note, the gypsum company mailed a notice to A. D. Mackey and Myra Post Mackey, addressed to them at Great Falls, Mon-

tana, notifying them that the 198 shares of stock would be sold upon the twenty-second day of July, 1916, in Chicago, and the proceeds thereof applied in accordance with the terms of the note. By reason of the fact that the Mackeys were not at Great Falls at the time, they did not receive notice of the proposed sale until after the time mentioned for the sale. On July 22, in pursuance of the notice, the sale was held, and there being no other bidders, the gypsum company made a sale of the stock to itself for the sum of fifty cents a share, or a total consideration of $99. On July 26, 1916, the gypsum company mailed a letter to the Mackeys advising them that the sale had been made of the stock for the sum of $99, and making demand for the payment of the deficiency upon the note. On the 1st of August, 1916, Mackey Wall Plaster Company brought suit in the federal court to enforce specific performance of the contract to purchase the properties of the company, resulting in a decree in favor of the Mackey Company in the district court, which was affirmed by the circuit court of appeals June 10, 1918, the case being reported in 252 Fed. 397, 164 C. C. A. 321. Thereafter this suit was brought to establish the rights of the gypsum company as owner of the 198 shares of capital stock.

The defendants contend that the sale of stock to the gypsum company was void for several reasons, and that, even if not void, its conduct in the matter of forcing the sale was so inequitable and unconscionable that it is not in a position to receive the aid of a court of equity in establishing its ownership to the stock.

The pledge agreement as contained in the note is clear and unambiguous in its terms, although it might be harsh in its operation. We have carefully examined the several contentions made by defendants as to the validity of the sale, and we are unable to find that the manner of conducting the sale was not in conformity with the contract or in fulfillment of the obligations of the gypsum company as pledgee. However, we are satisfied that under the circumstances of the case the sale was

unnecessary and inequitable. The note held by the gypsum
[2] company was given by A. D. Mackey and Myra Post
Mackey, his wife, who owned all the stock of the Mackey Wall
Plaster Company. The business of the company was in fact
the business of the Mackeys, and *vice versa.* The corporation,
although maintaining the form of legal existence, was, in effect,
merely the name under which A. D. Mackey and Myra Post
Mackey were doing business. This fact was evidently known
to the gypsum company, for at the time the note was given to
the gypsum company, the Mackeys offered to secure it by the
entire capital stock of the Mackey Company; but the gypsum
company being satisfied with only 198 shares of stock as col-
lateral, no more stock was pledged. It has been held by this
court that where the stock of a corporation is owned by one
person, whereby the corporation functions only for the benefit
of such individual owner, the corporation and the individual
should be deemed to be the same. (*Edwards* v. *Plains Light &
Water Co.,* 49 Mont. 535, 143 Pac. 962; *Barnes* v. *Smith,* 48
Mont. 309, 137 Pac. 541; *Hanson Sheep Co.* v. *Farmers' &
Traders' State Bank,* 53 Mont. 324, 163 Pac. 1151.) In the
*Hanson Sheep Company Case,* above mentioned, it was held that
under ownership of the capital stock similar to that involved in
this case it is proper for the individual to use the corporate
assets in discharge of his individual indebtedness. Such a case
is an exception to the general rule that an officer of a corporation
cannot use the corporate funds in payment of his personal
obligations. Thus the Mackeys had the right to use the cor-
porate funds to pay their personal obligations, for they were
the corporation.

At the time of the maturity of the note, the gypsum company
[3] was indebted to the Mackey Company in the sum of
$50,000, of which $15,000 was immediately due, more than
enough to satisfy the note. The Mackeys had the right to
authorize the gypsum company to deduct from the payment due
from it to the Mackey Wall Plaster Company the amount due
upon the note. This offer was not a legal tender, nor did it

constitute payment of the note; nevertheless, it did afford to the gypsum company an opportunity of receiving full payment for the note without the necessity of making a sale of the stock. The two obligations constituted counter demands, and, in a proper action in court, one could have been offset as against the other. The fact that the gypsum company denied its obligation is immaterial upon this phase of the case, inasmuch as the obligation existed regardless of such denial. However, without waiting to find out by decree of the court whether or not it was liable to purchase the plant, it chose to proceed forthwith under the power of sale contained in the pledge contract. It is obvious that in such proceeding no opportunity whatever was given to the Mackeys to offset their claim. It has been held that where there has been no opportunity to make offset of claim by reason of the act of the other party, equity will intervene in order that justice may be done. (34 Cyc. 634; *Garvin* v. *Squires,* 9 Ark. 533, 50 Am. Dec. 224.)

Not only did the Mackeys offer to permit the note to be offset against the purchase price, but they kept their offer good by the allegations of their complaint in the federal court action, and by deposit of funds with the clerk of the court in this action, sufficient to satisfy the amount due on the note exclusive of the $99 credit given on the sale. Under these circumstances, it seems to us unconscionable to permit the gypsum company to hold the stock, of a value of over $19,000, and also collect the note against the Mackeys with a nominal indorsement of $99 upon it, when the interest of all parties could have been conserved if the gypsum company had either acknowledged its debt or given the Mackeys an opportunity to litigate their claim as an offset against the note. The maxim, "He who seeks equity must do equity," applies. A court of equity cannot aid a litigant in establishing a claim based upon inequitable, unfair and unconscionable conduct, and therefore this court must refuse to assist the plaintiff in establishing its title secured through a sale under circumstances as above set forth. The sale

having been made by plaintiff to itself, the situation should be deemed the same as though no sale had been made, and defendants should have the privilege of redemption with the moneys deposited in court for that purpose.

It is contended by plaintiff that the costs of the receivership [4] were improperly taxed against it by the trial court. The rule governing the taxation of such costs is clearly set forth in *Ervin* v. *Collier*, 2 Mont. 605, and has been followed by numerous cases since. In that case the rule is stated as follows: "This is a case in equity and the taxation of the costs rests in the sound discretion of the court. * * * There are no exceptional facts in this case which require the court, in the exercise of a legal discretion, to tax the costs of the receiver against the party in whose favor all the equities were found. It does not matter how or why the receiver was appointed. He is entitled to his costs, which were taxable in this action. No application was made for his removal and no exception was taken to his report and we presume that he was appointed legally and performed his duty faithfully. His compensation should come from the party whose wrongful acts made his appointment necessary in order to preserve the property during the litigation." Plaintiff recognizes the rule above mentioned, but insists that in its application to this case, the costs should be taxed against defendants. However, by reason of the view we take of the equities involved in this case, it is our opinion that the trial court exercised the proper discretion in taxing the costs of the receivership against plaintiff.

Several other alleged errors are assigned but in view of the disposition of the issues already discussed, it becomes unnecessary to consider any other assignments.

The judgment and order overruling motion for new trial are affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Associate Justices Cooper and Galen concur.

MR. JUSTICE HOLLOWAY: I dissent.  It is conceded in the majority opinion that the sale of the pledged stock was·in all respects regular and according to the terms of the pledge agreement and in conformity with the provisions of our statute (Rev. Codes, secs. 5774–5799).  The pledgors did not redeem the pledged property before sale, for it is conceded that they did not pay or tender payment of the amount of the debt. These propositions are elementary: (a) A valid sale of pledged property passes title to the purchaser, and (b) cuts off the right of redemption.  The plaintiff then became the owner of the shares theretofore pledged to it, and as such is entitled to ·all the rights and privileges pertaining to such ownership.

Rehearing denied June 20, 1921.