Leon S. Earp and Katherine F. Earp, Appellants, v. Herbert J. Schmitz and Central Steel Fabricating Company, Appellees.

Gen. No. 44,253.

Opinion
filed May 26, 1948. Rehearing denied June 9, 1948. Released for publication June 10, 1948.

JOHN B. SCHMIDT and MAXFIELD WEISBROD, both of Chicago, for appellants.

McMAHON, FINN & PLUNKETT, of Chicago, for appellees.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a forcible detainer action to gain possession of a one story factory building at 4227 North Knox Avenue, Chicago. Trial by the court without a jury resulted in a finding and judgment for defendants. Plaintiffs have appealed.

Plaintiff Leon Earp, about the year 1936, went to work as a salesman for the Central Architectural Iron Works, a Corporation, "owned" by defendant Schmitz. In 1941 Earp and Schmitz formed a partnership to succeed the corporation and used the corporate name. In 1942 they made a lease for the Knox Avenue plant. The lease contained an option to purchase for about $45,000. In 1945 the partnership was dissolved and pursuant to the dissolution Earp purchased the

property under the option and leased it to Schmitz, doing business as the Central Architectural Iron Works, hereinafter called the Iron Works.

The premises were leased June 27, 1945, for the sole purpose of steel construction work and the fabrication of steel and iron products. The term is from August 15, 1945 to August 14, 1947 to be "automatically extended" from year to year for eight years thereafter unless terminated by lessee. The first year's rent was $26,500, payable in equal monthly installments. One of the covenants in the lease is a prohibition against allowing "said premises to be occupied in whole or in part by any other person . . ." without consent of the lessor. Another is that receipt of rent by lessor "in apparent affirmance of tenancy" will not waive lessor's right to forfeit the lease for breach of covenant. Another provision is that any rights given lessor or lessee in the lease extends to his agent, etc.

It is the covenant against allowing "any other person" to occupy which plaintiffs allege was breached. Their position is that Schmitz allowed the Central Steel Fabricating Company, a corporation, hereinafter called the Corporation, to occupy the premises in whole or in part. Defendants' position is that the Corporation was the alter ego of Schmitz and not another person. It is admitted the corporation was organized, that there was no change in the nature of the business conducted on the premises and that the business conducted was authorized under the lease.

The corporate charter issued August 31, 1945 and was recorded in Cook County September 7th. The incorporators named were Wheeler, Peterson and Sterly. They acted as incorporators at the request of Schmitz. The address of the Corporation was given as 4227 N. Knox Avenue. The incorporators named were at the time important employees of the Iron Works. October 1, 1945, Sterly of the Corporation certified to

the Liberty National Bank of Chicago that on that date he was duly elected secretary-treasurer of the Corporation, and that at a Board of Directors' Meeting that day resolutions were adopted designating that bank as depositary and authorizing Sterly as treasurer and Schmitz as chairman to sign checks. The certificate was made for the purpose of opening in the corporate name, a general and a payroll account. Wheeler and Schmitz signed the certificates as President and Chairman of the Board of the Corporation respectively. October 1, the Liberty Mutual Insurance Company issued a policy to the Corporation indemnifying it against liability under the Workman's Compensation Law of Illinois. A certificate of the insurance was duly filed with the Industrial Commission. October 9th, Sterly, as secretary-treasurer of the Corporation applied to the United States Government for an identification number for its contributions to Social Security Compensation of its employees. Thereafter the number was issued to it. It filed returns for three quarters of a year, commencing with the quarter ending December 31, 1945. These returns were certified and filed by Sterly. The first return filed gave the number of employees as 361, the second as 274 and the third as 306.

The accounts were opened at the Liberty National Bank and about 6,000 payroll checks issued during the period involved here. The checks were drawn in the corporate name, payable to the employees named in the Social Security returns. In November 1945 one of the employees named applied to the Industrial Commission for compensation for an injury arising out of and in the course of his employment with the Corporation. The claim was settled by the Liberty National Insurance Company under the policy issued to the Corporation. A request was filed with the Commission by an agent of the Corporation with respect to the service of notices, etc.

The foregoing facts were proved almost entirely by documents. The trial court over objection of plaintiffs' permitted oral testimony on behalf of the defendants of the further facts hereinafter related. The Iron Works was in 1945 a member of the Iron League an association of employers. The association had a labor contract with a Union embracing the employees of the Iron Works. The contract did not authorize the incentive pay plan of production. Under advice of a Union official Schmitz made a separate contract with the Union, giving authority for the incentive plan. This contract was made in the name of Central Steel Fabricating Co., although the Corporation had not yet been formed. After the Corporation was formed Schmitz, doing business as the Iron Works, deposited $10,000 in the Corporate bank accounts. The deposits were made either through checks drawn by the Iron Works or through customers' checks payable to the Iron Works and endorsed for deposit in the Corporate accounts. Checks were drawn against both accounts. We think it can be fairly said that the testimony of Wheeler, Schmitz and Sterly is to the effect that the statements made in the certificates to the Bank and to the United States Government with respect to corporate affairs were false. There is testimony that no stock issued under the charter, no meetings were held, no Board of Directors elected, no officers elected or appointed, no assets of the Iron Works transferred to the Corporation except the funds for the bank accounts, and no space on the premises allotted to the Corporation. Further testimony is that the employees, though paid with checks drawn by the Corporation, rendered services not to it but to the Iron Works; that the premium for the Workmen's Compensation insurance was paid with an Iron Works check; that purchasing, selling, invoicing and correspondence was carried on in the name of the Iron Works and on its letterheads; that the name of the Iron Works re-

mained on the Knox Avenue premises after the corporation was formed; that no change was made in the operation of the business thereafter; and that no change was made in the telephone directory. An important customer's representative testified that on his frequent business visits to, and telephone communications with, the plant he found the business carried on in the name of the Iron Works; that he never saw the Corporation name on the premises; and that he did not know of its existence.

The rent for the first two months rent was paid with the check of the Iron Works. The rent for the third month was paid with a check of the Corporation. It was accepted, cashed and the proceeds retained. The rent for the fourth month was tendered in the form of a Corporation check. It was returned. Thereafter, checks of the Iron Works and Schmitz for the November rent were tendered and refused. Rent was tendered and refused for each month thereafter.

The question is whether the Corporation was "any other person" occupying the premises in whole or in part in violation of the covenant in the lease. It is a question of law. There is a factual question involved as a basis for the legal question. It is, what was the function of the corporation? The trial court presumably believed defendant's witnesses on this issue.

There is no dispute about the elementary principles urged that contracts are to be enforced as made; that leases are to be construed most strongly against the lessor; and that forfeitures and provisions such as the one involved here are not favored in the law. Plaintiffs contend that the corporation is a distinct entity with its own payroll and employees; that it operated a business on the premises for 9 months; that it maintained its own compensation insurance under which one of its employees was paid; that it made its own Social Security returns and that it occupied the premises without right, in violation of the laws. De-

fendants argue that there was no occupancy by the corporation but that, even if there were, it was as a mere instrument of Schmitz and that finally the corporate entity should be disregarded in this case to prevent injustice.

At the outset we find that there was no error in the admission at the trial of the defense testimony in explanation of the documentary evidence introduced by plaintiffs. Plaintiffs give no citations in support of their contention of error, and, furthermore, plaintiffs do not dispute that their counsel brought out some of the testimony.

We have read the many cases cited by both parties. They are mainly from other jurisdictions. In the instant case, the Iron Works did not transfer its assets to the corporation, though it did give it some money; the actual business was carried on in the name of the Iron Works; no new employees were brought on to the premises by the Corporation; there was no hiding of the corporate existence from the plaintiffs; and this is a case where liberality should be exercised in favor of defendants and not plaintiffs. These considerations are sufficient to distinguish most of the cases cited by plaintiffs. There is no controversy about the rules that a corporation is a distinct entity; that a sole stockholder is not the owner of corporate property; and that generally one who has created a corporate entity will not be permitted to disregard it to gain an advantage, which under it would be lost. We point out, however, it is not only where third parties need protection that the courts have thought it just to treat a corporation and its sole stockholder as one and the same person. See *U. S. Gypsum Co. v. Mackey Wall Plaster Co.*, 60 Mont. 132, 199 Pac. 249. None of the cases cited by plaintiffs are controlling in the factual situation here. Plaintiffs have not been misled in any way by the formation of the Corporation. They dealt with Schmitz individually. There

was no change in the business after the Corporation was formed.

It is true that the Social Security returns stated that those listed were employees of the Corporation. Plaintiffs say that they were truly its employees and that the employees of the Iron Works were at another location in Chicago. We think on the record in this case the trial court would have been justified in concluding that the employees though named in the returns as employees of the Corporation, were actually employees of the Iron Works, or if considered employees of the Corporation, they were engaged in the business of the Iron Works.

It is our view that the Corporation was, at most, an agent of Schmitz in the conduct of the business of the Iron Works. If it can be said, therefore, that the Corporation, through the activity shown, occupied the premises, its occupancy was not that of "any other person" but that of Schmitz. *Peacock v. Feltman*, 243 Ill. App. 236.

For the reasons given the judgment is affirmed.

*Affirmed.*

LEWE, P. J., and BURKE, J., concur.