## Stamper v. Combs, et al.

(Decided May 19, 1915.)

### Appeal from Letcher Circuit Court.

1. Contracts—Options—Acceptance.—An option for the sale of a tract of land consists of two elements; one is an offer to sell the land, which must be accepted before it becomes a contract, and the other is an agreement to give the optionee a certain time within which to determine whether he will accept the offer to sell, and this is a completed contract.

2. Contracts—Options.—The contract by which the optionor gives to the optionee a certain time within which to decide whether to accept the offer to sell, must be supported by a sufficient consideration, and if it is not supported by a consideration, or if the consideration is merely nominal, the optionor, before acceptance of the offer to sell, may revoke it and withdraw his offer to sell, by notice to the optionee, after which there is nothing for the optionee to accept.

3. Contracts—Options—Consideration.—Although the option given is without consideration, yet if the optionee, within the time specified, and before its withdrawal by the optionor, exercises the option and accepts the proposition to sell, in such a way, that performance of the conditions may be required of him, it becomes an enforcible contract.

4. Contracts—Options.—The exercise of an option to sell land and acceptance of the offer of sale, must be a substantial compliance with all the conditions of the offer.

D. D. FIELDS, IRA FIELDS and R. MONROE FIELDS for appellant.

J. W. HALE, J. M. COOK and JOHN C. EVERSOLE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, William Combs, owned a tract of land in Letcher County, consisting of about 300 acres. He claims that on the 4th day of May, 1910, on account of his ignorance and want of business knowledge and capacity, and the value of his lands, that he was induced by an agent of the North Fork Coal and Timber Company, for the nominal consideration of $1.00, to execute a paper, by which he agreed that if the North Fork Coal & Timber Company, within six months after the date of the writing, should elect to buy his lands, at the sum of $5.00 per acre, and pay to him the said sum therefor, he would convey the lands to it by deed with clause of general warranty. The acreage was to be determined by a survey made at the expense of the coal and timber company. He claims that his lands at that time were of the value of at least $15.00 per acre, and in a very short time thereafter, learning of his mistake, he became very much dissatisfied with the option he had given upon the lands, and posted up some notices in writing at places upon the land, forbidding it to be surveyed, and that thereafter, from three to four weeks before the option expired, some surveyors, representing the coal and timber company, came to his place to survey the lands, and that he told them that he did not want it done, and that the surveyors left, saying to him that he would not be further interfered with, and thereafter, about the first of November, the appellant, Stamper, came to his place and notified him that he had purchased the option from the North Fork Coal & Timber Company, and that he was going to proceed to survey the lands, and take it at the price of $5.00 per acre, unless he would agree to sell him the timber on the land; that he declined to do so, when Stamper came with surveyors on the 3rd day of November, about noon, and on the 3rd and 4th days of November did some surveying, and on the 4th day of November, believing that the *option* contract was still in force, and Stamper so representing to him that it was, in order to prevent the lands from being taken from him at $5.00 per acre, he and his wife, Mahala Combs, were induced to execute a deed to Stamper, by which they sold to him all the oak, hickory, and black pine trees upon the lands, which were five feet and above in circumference, and all the walnut trees which were four feet and above in circumference, except a small lot of timber trees in a designated place upon the premises,

in consideration of Stamper paying to him $150.00, and delivering him the option released, which he had executed to the North Fork Coal & Timber Company. The deed provides that if the option is not delivered to him, the deed was to be void. He claims that having waited about a month for Stamper to deliver him the *option* contract, and he having failed to do so, he and his wife, Mahala Combs, instituted this suit for the cancellation of the deed to Stamper, alleging that it was procured by the fraud of Stamper, in representing that he had purchased the contract from the coal and timber company, when he had not done so, and that it was in full force and effect at the time of the making of the deed, when it, in fact, was not enforcible, and that he was going to take appellees' lands, under the option, and that the price, which he received for the timber was grossly inadequate, and that the means used by Stamper to procure the deed were oppressive and fraudulent, and done with the purpose to impose upon his ignorance and want of business capacity, and that the advantage taken of him in procuring the deed was unconscionable and inequitable. He furthermore claims that the timber embraced in the sale to Stamper was of the value of about $2,000.00 at the time.

The appellant, Stamper, claims that $5.00 an acre was the fair value of the land at the time the contract was made with the North Fork Coal & Timber Company by appellees, and that the coal and timber company would have elected to exercise the option within the life of it, by surveying the land and paying the price agreed upon, but for the fact that the appellees forcibly prevented its surveyors from surveying the lands by putting them in fear of bodily harm, and that he purchased the contract from the coal and timber company on the first day of November and that it was assigned to him on that day, he paying to the coal and timber company $50.00 for it; that he did not have the contract at the time he undertook to survey the lands, because it had been sent to him by mail, and addressed to a postoffice other than the one at which he received his mail; that it was in full force on the 4th day of November, and that he could have surveyed the lands and paid the price according to the contract on that day, but that appellees proposed to him to sell him the timber, and at their request, he stopped the survey and accepted the deed, and

paid to appellees $5.00 in money and gave him a check for $145.00 on the 4th day of November, and the appellees executed and delivered the deed, and that he had since that time, but not before the bringing of the suit, offered to deliver the *option* contract to appellees, but that they refused to accept same, and denied his guilt of any fraud or oppression upon his part in securing the deed. It, also, appears from the evidence that before the suit was brought, and after the appellees had offered to return the check and money paid him by appellant and requested a return to him of the deed, and that appellant had refused to accede to these requests of the appellees.

The court below adjudged that the deed be cancelled, and that appellees pay to appellant the sums which he paid out in the transaction, with interest, and adjudged that this sum be a lien upon the timber in controversy.

The writing executed by the appellees to the North Fork Coal & Timber Company was a mere offer upon the part of the appellees to sell their lands at $5.00 per acre, and to convey them to the coal and timber company, within six months from the date thereof. There was nothing in the writing which bound the North Fork Coal & Timber Company to accept the offer or to complete the transaction to purchase and pay for the land. The writing contains two elements, an offer to sell, which does not become a contract without an acceptance, and the other to leave the offer open for six months, which was a complete contract. This complete contract, by the terms of which the North Fork Coal & Timber Company was to have six months from its date in which to make an election to accept the offer to sell the land, in order to be binding upon appellant, must have necessarily have been supported by a valuable consideration. The consideration supporting the contract was one dollar, in hand paid. This is no substantial consideration to support a contract giving one six months' time in which to determine whether he will accept an offer to purchase 300 acres of land, in a community where values are rising rapidly. It is merely nominal. To make the offer to sell the lands a contract binding upon appellees, it was necessary for the holder of the writing to have given them notice of an acceptance of the offer, and to have ascertained the price by a survey of the lands, and a tender of the price of it, within the time specified in

the writing. Thompson v. Reid, 101 S. W., 964; Kernan v. Carter, 104 S. W., 308; Boucher v. Van Buskirk, 2 A. K. M., 345; Litz, etc., v. Gooling, etc., 93 Ky., 185; Noble v. Mann, 105 S. W., 152; Berry v. Frisbie, 86 S. W., 558. A mere option, as in this case, is not a sale, nor is it a contract of sale. It did not give the assignor of appellant, without an acceptance, any interest in the land. Luigart v. Lexington Turf Co., 130 Ky., 473, 113 S. W., 814; Stembridge v. Stembridge, 87 Ky., 91, 7 S. W., 612.

The option given the assignor of appellant by the appellees prescribed as conditions for its acceptance, that the optionee would pay to appellees $5.00 per acre for the land; after ascertaining its acreage by a survey, within the life of the option.

In 39 Cyc., 1238, the rule prescribed for the acceptance of an offer to sell lands, embraced in an option contract, is: "The acceptance of the option, or the election when made, must be unqualified and unequivocal, must be communicated to the party giving the option, in no uncertain manner, and be such that after it is exercised, it becomes binding upon the party exercising it."

There is no pretense that the North Fork Coal & Timber Company ever accepted the offer, or ever put itself in a position, that it could have been required to accept a conveyance for the land or to pay for it. It at no time ever gave the appellees any notice to that effect. It is true, that in the month of October, before the expiration of the time, in which it had to exercise the option, it sent a surveyor to the lands with the purpose of having same surveyed, but failed to notify appellees that it would accept the offer to buy the lands or pay for same, after the survey should have been made. Appellant insists that the appellees put the surveyor in fear, and prevented him making the survey. The proof, however, does not sustain this contention. The testimony of the surveyor and those with him, is only to the effect that appellee, William Combs, said that he did not want the land surveyed, and that he wanted to be rid of the option, and it should not be surveyed if he could prevent it. The fears, which overtook the surveyor, seem to have been caused by loose talk of some of the neighboring people. The fact that appellees quietly submitted and made no offer of resistance when appellant came and proceeded to survey the lands, shows that the fears of the surveyor were groundless.

The North Fork Coal & Timber Company could not have enforced its option in a court of equity, without first having accepted the offer to buy the lands by surveying the lands and tendering the price, and it must have done this, before receiving the notice, that appellees had repudiated and withdrawn the offer to sell the lands.

The option being a mere offer to sell and the contract to keep the offer open for acceptance for six months being without substantial consideration, the appellees could withdraw the offer and repudiate it at any time, by conveying notice of their repudiation of it to the holder of it, before its acceptance, and thereafter the holder would be without authority to accept or exercise it. Thompson v. Reid; Noble v. Mann, *supra; 39 Cyc.,* 1236.

The proof shows that the agent for the North Fork Coal & Timber Company sought out the appellees to procure the option from them, and it is proven by one of the attesting witnesses to it and another present, that he had great difficulty in procuring its execution, especially by appellee, Mahala Combs, and only succeeded after a great deal of talking and persuasion. Before the agent got away from appellee's home, the appellee, William Combs, had repented of the transaction, and offered to return the dollar, which had been paid to him for the option, and requested the return of the paper to him, but the agent represented that he would return in a short time, and thus left them. It seems that appellees became satisfied and anxious for the option to be taken up, and so continued for about one month, when they again became dissatisfied, and attempted to repudiate it by posting notices upon the land, forbidding the optionee from having it surveyed. The proof fails to show that knowledge of this ever came to the optionee. However, when the surveyor for the coal and timber company was at the home of appellees in October, the appellees objected to him surveying the land, and by their request, promised appellees that he, and those with him, would inform the president of the company, by telephone, of appellees' determination not to abide by the arrangement, but at that time he could not reach the company's president by the telephone. It is very evident, however, that he delivered the message to the president of the company, at once, in some other way, because the appellant testifies that when he undertook to buy the option, about the 20th of October, that the president of

the company then told him of appellees having repudiated the offer. The appellant was a near neighbor of appellees, and according to his own testimony, knew of appellees' effort to revoke the offer to sell, at the time he bought the option.

In Noble v. Mann, *supra,* Mann had given an option, similar to the one in the case at bar, to Noble, upon his tract of land, to run for one year. About one month after, Mann sold and conveyed the land to Little. This court said: "The contract sued upon was an option without consideration. Mann had the right at any time before its terms were complied with by the optionee to withdraw the proposition contained in it. His sale and conveyance to Little was a repudiation of his option, and as he had a right to withdraw it, it does not matter what his motive was, nor as to Little's knowledge of the terms." It does not appear that in this case Noble had any knowledge of the sale of the land by Mann until after it was done, nor had he any notice of the revocation by Mann of the option.

The option having been withdrawn before appellant's purchase of it, there was no offer on the part of appellees for him to accept for a sale of their lands as he had full knowledge of the revocation, and so had his assignor.

The value of the timber trees embraced in the deed from appellees to appellant was variously estimated by the witnesses to be from $800.00 to $2,000.00, and the court below found them, as a matter of fact, to be of the value of $900.00. The proof shows that appellees are both very weak, illiterate, and ignorant persons. They had made efforts to buy other land for a home, but had failed, and believed that appellant could exercise the option, and take the lands from them, by paying the price of $5.00 per acre, which was largely less than it was worth. The appellant was a prominent man, a justice of the peace and a shrewd man. He came with surveyors on the 3rd day of November and proceeded to commence to survey the lands, but it is evident from the proof, that the survey could not have been completed before the expiration of the option by lapse of time. Appellee says that appellant, on the 1st of November, informed him that he had bought the option, and was going to exercise it by taking the land, but at the same time proposed to take the timber and leave the land for appellees. Appellant cannot remember which first pro-

posed the timber deal. It is proven by a neighbor, that before the deed for the timber was executed the appellee was seeking advice of him, in regard to the sale of the timber to appellant, and stated that appellant had offered him $150.00 for it, and another witness testified to having heard appellant making propositions to appellee for the sale of the timber to him. The facts are susceptible of the construction, that appellant was merely making a show of surveying the land, as a leverage upon appellees to get their consent to a hard bargain by which he would get the timber, and it had the effect sought for. The only real consideration for the execution of the deed to appellant was $150.00. There is no doubt that the sole reason which actuated appellees to make the deed was the belief that the option upon their lands was still enforcible, and to keep from giving up their lands under the option at a sacrifice, was really the chief and moving consideration for the execution of the deed.

Without discussing, or setting out all the facts and circumstances, in evidence, which go to support the judgment below, suffice it to say, the evidence tends strongly to support the opinion of the chancellor. He was acquainted with the parties and witnesses, and had better opportunity to know the weight to be attached to their statements than we have, and it appearing that his judgment did substantial justice between the parties, it will not be disturbed.

The judgment is affirmed.