**William W. Keefer, Appellant, v. The United Electric Coal Companies, Appellee.**

**Gen. No. 9,043.**

Opinion filed October 15, 1937.

SIMS & STRANSKY, of Chicago, for appellant; FRANK-LIN J. STRANSKY, of Chicago, of counsel.

ACTON, ACTON & BALDWIN, of Danville, for appellee; W. M. ACTON, of Danville, of counsel.

MR. JUSTICE RIESS delivered the opinion of the court.

Plaintiff appellant filed suit for damages for breach of a written contract based on defendant's refusal to purchase coal lands in Fulton county, Illinois. The court sustained a motion by defendant to dismiss the second amended declaration of the plaintiff and entered a judgment in bar of the action from which the plaintiff appeals.

The declaration as amended alleges that the plaintiff, on January 2, 1925, was the owner in fee simple of 220 acres of land in Fulton county, Illinois, commonly known and designated as the "Strode and Hilton land," and on that day executed and delivered to the defendant a written option to purchase said real estate for the sum of $85,200, at any time on or before January 1, 1926.

The option is set forth in the declaration and is as follows:

"Option

"KNOW ALL MEN BY THESE PRESENTS, That W. W. Keefer, the owner of the following described real estate, in consideration of one dollar and other covenants and agreements herein set out, does hereby agree to sell and convey to The United Electric Coal Companies or its assigns, the following described real estate, situated in the Township of Putman, County of Fulton, State of Illinois, to-wit: Southeast quarter of Section twenty one (21) and the south half of the southwest quarter of the southwest quarter and the southeast quarter of the southwest quarter of Section twenty two (22), all in township six (6) north range three (3) East, containing 220 Acres, more or less.

"IT IS AGREED, that the said The United Electric Coal Companies or its assigns, shall have the right to

purchase said lands at any time on or before the first day of January, 1926, without the payment of any rentals hereinafter provided to be paid upon the continuance of this option for a longer period.

"During the continuance of this option the said The United Electric Coal Companies or its assigns, shall have the right to drill or otherwise test said lands for the purpose of investigating the coal contents of said lands, causing and occasioning no unnecessary damage to said premises, improvements or crops thereon. Said tests may be conducted at such times in such places as the said The United Electric Coal Companies or its assigns, shall desire.

"In the event the said The. United Electric Coal Companies or its assigns, shall elect to purchase the above described real estate, the purchase price of said lands shall be $85,200.00, payable as follows:

"Thirty-seven thousand dollars ($37,000.00) cash in hand and the balance in eight (8) equal annual payments with interest at the rate of six (6) per cent per annum, payable annually from January 1, 1925.

"In the event the said The United Electric Coal Companies, or its assigns shall elect to purchase the said land, the said owner or his assigns shall furnish an abstract of title to the said land showing clear record title, and shall give the said The United Electric Coal Companies or its assigns, a reasonable time thereafter in which to examine the said abstract, the said owner, or his assigns, agreeing to cure the defects, if any, shown on such examination and to convey to the said The United Electric Coal Companies or its assigns, the said land by general Warranty Deed clear and free of dower, homestead and all other incumbrances, except . . . and this agreement shall remain in full force until the same is delivered with the said deed.

"The failure of said The United Electric Coal Companies or its assigns, to pay the purchase price as

herein agreed shall render this option and contract null and void, and each party shall thereupon be discharged from any and all liabilities and claims arising hereunder.

"It is agreed that in the event this option is exercised, the said $37,000.00 will draw interest from January 2, 1925, to the date of payment at the rate of six (6) per cent per annum.

"IN WITNESS WHEREOF, we have hereunto set our hands this 2nd day of January, 1925.

"W. W. KEEFER, (Seal)"

The declaration further alleged that on May 27, 1925, the defendant did, by an instrument in writing, elect to exercise the above option, which election was as follows:

"May 27, 1925.

"W. W. Keefer,
    Pittsburgh, Pa.

"Dear Sir:

"We hereby elect to exercise option on 220 acres immediately adjacent to lands covered by lease now in effect with our company and known as the Strode and Hilton lands in Fulton County, Illinois.

"UNITED ELECTRIC COAL Co.
    By H. A. Swallow,
        Its President."

The declaration further alleged that the defendant on June 1, 1925, entered into possession of the real estate described in the option and continued in such possession for several months thereafter, for the purpose of doing certain work preliminary to the mining of the coal contents of said land; that the real estate mentioned and described in the option had a special value on account of coal deposits underlying the surface thereof, and that on account of its proximity to other lands owned by the defendant, on which defendant was

engaged in mining and removing coal, said lands were of a special value to the defendant, over what their value would be to any other person or corporation; that said land had no value for any purpose other than mining and removing coal therefrom, except for farming purposes and that the value for farming purposes would not exceed $100 per acre; that after the receipt of said instrument in writing, dated May 27, 1925, the plaintiff offered to execute and deliver to the defendant, clear and free of dower, homestead and all other incumbrances; that the defendant declined said offer of the plaintiff to execute said warranty deed and repudiated the contract and agreement created by the instrument in writing and refused and wholly failed to pay any part of the purchase price provided in said option for the transfer of the real estate described therein. Damages were asked in the sum of $75,000.

The original declaration in this case was filed on the 15th day of September, 1932, and the second amended declaration was filed on September 30, 1936, on which day the motion to dismiss the same was also filed.

This motion of the defendant, in the nature of a special demurrer, which was sustained by the court, sets out in substance the following specific objections to the second amended declaration: First, that it is based upon and sets forth a written option given defendant to purchase certain lands by the payment of $37,000 in cash and the balance in eight equal payments, containing the following provision: "The failure of said The United Electric Coal Companies or its assigns to pay the purchase price as herein agreed, shall render this option and contract null and void, and each party shall thereupon be discharged from any and all liabilities and claims arising hereunder"; that this provision and the allegation that no part of the purchase price was paid by the defendant prevents any liability on the part of the defendant under said option

and precludes recovery by the plaintiff from the defendant. The motion further states that the declaration is uncertain, contains mere conclusions of the pleader, fails to set forth sufficient facts to state a cause of action, makes no allegation that the plaintiff has made tender of performance and has at all times been ready, able and willing to perform its part of the purported contract, and that it appears from the amended declaration that more than 10 years have elapsed since the purported execution of an acceptance of said purported option and is barred by the statute of limitations.

The plaintiff appellant contends that the second amended declaration sets forth a good cause of action and that the offer in the written option therein set forth was fully accepted according to its terms by the defendant appellee and thus became a bilateral contract binding on both parties for the alleged breach of which this action was filed and the plaintiff appellant seeks recovery of damages herein.

The defendant appellee contends, *contra,* that the said declaration, as amended, fails to set forth by proper averments and allegations sufficient facts to state a good cause of action and that the option contract was never accepted by the optionee according to the terms and conditions precedent therein expressly provided and that the unilateral written option did not, therefore, become a bilateral executory contract for the sale of real estate binding upon or enforceable by or against the respective parties thereto.

The defendant's motion to dismiss the declaration admitted all facts well pleaded, but did not admit the conclusions of the appellant, or his interpretation, or construction of the option agreement, or the alleged contract for sale.

An option is a right acquired by contract to accept or reject a present offer within a limited or reasonable

time in the future. In such contract two elements exist: First, the offer to sell, which does not become a contract until accepted; second, the completed contract to leave the offer open for the specified time. *Bates v. Woods,* 225 Ill. 126, 130, 80 N. E. 84; (Citing *Black v. Maddox,* 104 Ga. 157, 30 S. E. 723; *Ide v. Leiser,* 10 Mont. 5, 24 Pac. 695, 24 Am. St. Rep. 17; *Bayfield v. Defenbacher,* 266 Ill. App. 385, 392; *Raddle v. Lindemann,* 151 Ill. App. 441.)

This court, in *Bayfield v. Defenbacher, supra,* and *Raddle v. Lindemann, supra,* cites with approval the following definition of an option therein quoted from *Ide v. Leiser, supra,* viz.: "An option is a contract by which the owner of property agrees with another person that he *shall have the right* to buy his property at a fixed price within a certain time. He does not sell his land. He does not then agree to sell it; but does sell something, viz.: *the right or privilege* to buy at the *election or option* of the other party." This right or option so purchased, to be valid, must be based upon a valuable consideration, which in the written option herein set forth is recited to be "in consideration of one dollar and other covenants and agreements herein set out." *Bayfield v. Defenbacher, supra,* p. 392.

The courts of review of this State have drawn a clear distinction between the two classes of contracts; namely, the unilateral option contract and a bilateral contract for the sale of real estate. This distinction is set forth in apt language by the Supreme Court in the case of *Lake Shore Country Club v. Brand,* 339 Ill. 504, 521, 171 N. E. 494. "An option contract is unilateral. Under it the optionee has a right to purchase upon the terms and under the conditions therein named. He is not, however, bound to purchase: Because but one party is bound thereby and the other is not, courts will exercise their discretion with great care in determining whether such a unilateral contract has been converted

into a bilateral contract. (*Crandall v. Willig,* 166 Ill. 233, *Estes v. Furlong,* 59 id. 298.) If conditions precedent to the right to convert a unilateral contract into a bilateral one are not met the unilateral contract does not become bilateral. (*Barnett v. Meisterling,* 327 Ill. 564; *Bostwick v. Hess,* 80 id. 138.) An option contract is not a contract of sale within any definition of the term, and at best but gives to the option holder a right to purchase upon the terms and conditions, if any, specified in the option agreement. In order to avail himself of the right, the optionee must comply with the conditions set out in the option contract. (*Bostwick v. Hess, supra.*) In this respect the denial of an option to purchase property differs from the forfeiture of property rights already acquired under a bilateral contract. (James on Option Contracts (1916), sec. 862) Therefore, unless the appellee has met the conditions of the option contract or the conditions have been waived it is not entitled to exercise the option.''

An acceptance of an option to purchase must be such a compliance with the conditions as to bind both parties, and if it fails to do so, it binds neither. *United States Gypsum Co. v. MacKey Wall Plaster Co.* (9 C. C. A.) 252 Fed. 397, 400, 164 C. C. A. 321.

Where a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other. *Lancaster v. Roberts,* 144 Ill. 213, 223, 33 N. E. 27; *Ulrey v. Keith,* 237 Ill. 284, 86 N. E. 696.

No method is set forth in the written offer by which the option to purchase shall be accepted. It is not stated whether the option shall be exercised by written or verbal notice or in any other manner. It is clear, however, that if the appellee, at any time within the time limit fixed therein, viz.: from January 1, 1925, to and including January 1, 1926, had without any word, either written or verbal, paid the initial payment of $37,000 with six per cent interest to the date of such

payment to the appellant as a payment under the option, it would have entitled appellee to a deed as therein provided.

The contract specifically provides that at any time during the continuance of the option, The United Electric Coal Companies or its assigns, as optionees, shall have the right to drill or otherwise test said land for the purpose of investigating the coal contents thereof, causing and occasioning no unnecessary damages to said premises, improvements and crops thereon, and that such tests may be conducted at such times and in such places as the said coal company or its assigns shall desire.

The option for the purchase of the 220 acres of land was clearly intended for use by appellee in the mining of coal and its optional purchase price was fixed at $85,200. In the amended declaration, the plaintiff further states that "said land had no value for any purpose other than mining and removing coal therefrom, except for farming purposes and that the value for farming purposes would not exceed $100 per acre." The express provision for drilling or otherwise testing the lands for the purpose of investigating the coal contents was made one of the material conditions and privileges of the option and a part of the consideration of the contract. Unless waived by the optionee, it became one of the conditions precedent to the acceptance of the offer. This valuable consideration could not be waived or taken from the optionee by the optionor. Without this test, the exercise of the option by the coal company would have been wholly valueless for the very purpose for which the option was expressly given. Nowhere in the declaration is it alleged or set up by the recital of ultimate facts that this essential part of the contract was complied with either before or after the letter of May 27, 1925, was mailed by the company to the plaintiff herein.

The declaration further alleged that the defendant on June 1, 1925, ''entered into possession of the real estate described in the option and continued in such possession for several months thereafter.'' From this allegation it can only appear that the defendant's entry upon the real estate immediately following the letter in question was for the necessary purpose provided for in the contract and that the period of ''several months'' mentioned was all within the time for which the option was held and within the time for which the coal company held the express right and privilege of going on the land and making the necessary preliminary tests before they could determine under the terms of the contract whether or not they would make final acceptance of the offer of purchase on the terms therein recited. Can it be reasonably inferred that they intended to waive this provision and consummate the purchase contract without any knowledge of the presence or absence of coal under the land?

The declaration alleges that after the receipt of said instrument in writing, the plaintiff offered to execute and deliver to the defendant a warranty deed, etc., and that the defendant declined said offer and repudiated the contract. Whether this alleged offer to make and deliver the deed was during the option period or at some subsequent time prior to the filing of the suit does not appear.

The conclusion of the pleader in its declaration that the defendant ''entered into the possession of said lands for the purpose of doing certain work preliminary to the mining of coal contents of said land'' could only mean, when taken in connection with the express rights and privileges of the option, that he entered thereon for the purpose of making the preliminary tests necessary to ascertain the coal content of the land. The conclusions of the pleader as to the defendant's intent and purpose of entering on the

land, with no allegation of fact in connection therewith, are neither binding upon nor admitted by the defendant under the pleadings and are not in accord with either the express terms of the contract or the alleged conduct of the defendant in pursuance thereof.

Whether or not the letter of May 27, 1925, referring to the option, had reference to the entry to make the necessary tests which would be preliminary to the initial payment of $37,000 provided for in the option or whether, as contended by the appellant, it was intended to be in full acceptance thereof and effective in converting the option contract into a contract of sale does not appear in "clear and unambiguous" language in this letter. As we have stated, the written option did not provide the manner in which the acceptance was to be made other than a statement of conditions precedent to consummating the transaction.

A further express and somewhat unusual provision was included in the written option which provided in plain and unambiguous language that "the failure of said United Electric Coal Companies or its assigns to pay the purchase price herein agreed shall render this purchase contract null and void and each party shall thereupon be discharged from any and all liabilities and claims arising hereunder." Clearly, the necessary tests provided for in the contract must precede the payment and clearly, moreover, this payment was made one of the express terms of the option agreement, with the nonperformance of which the same was to be declared null and void and each party discharged from all liability and claim arising thereunder. This provision was unilateral and was a condition precedent to the complete and final exercise of the option, without which the option agreement could not have been enforced against the optionor by the coal company as an accepted and completed bilateral contract of sale. The converse of this fact, therefore, necessarily fol-

lows, since the contract could not be binding and enforceable against either party unless it had become bilaterally enforceable against both of them; that this was the intention of the parties is set forth in the express provisions of the written option when construed together as they must necessarily be in arriving at such intent from the language of the whole instrument and each of the provisions thereof.

The forfeiture provision herein recited was not a provision in a bilateral contract of sale of real estate wherein the failure to pay would constitute a breach of contract, but is a provision in a unilateral written option, which option becomes null and void in the event of nonpayment of the amount specifically set forth in the option. Citations of authorities where there had been a breach of an executory contract for the sale of real estate are therefore not in point. The optionee is not bound by the option privilege until the same is accepted by him according to all of its express terms and provisions.

This rule is aptly stated in the case of *Pollock v. Brookover*, 60 W. Va. 75, 53 S. E. 795, 6 L. R. A. (N. S.) 403, which was a suit to enforce specific performance of an option agreement, the court at page 408 said: "The offer must have been fully and completely accepted, in all its parts, and its provisions strictly complied with, before it became an executory contract. It is the complete acceptance of the option, by complying with all its provisions in that respect, that concludes the contract between the parties."

In the case of *Winders v. Kenan,* 161 N. C. 628, 77 S. E. 687, the court held that "the acceptance must be according to the terms of the contract and in this regard the payment of the purchase money or any part thereof precedent to the exercise of the right to buy, the money must be paid or tendered and a mere notice of an intention to buy or that the party will take the property does not change the relation of the par-

ties." *Weaver v. Burr,* 31 W. Va. 736, 8 S. E. 743, 3 L. R. A. 94.

In *Trogden v. Williams,* 144 N. C. 192, 56 S. E. 865, 868, 10 L. R. A. (N. S.) 867, a contract was given to purchase land for $10,000, payable $5,000 cash and the remainder one year after date of the first payment to be secured by a mortgage upon the land at any time within the term of 90 days from the date of the contract of January 16, 1905. The evidence showed that within the 90 days, the optionee elected to purchase the land, but did not make the cash payment. The court held that there could not be a recovery because the cash consideration was not paid.

This controlling rule was early recognized and followed in this State. In *Bostwick v. Hess, supra,* a suit was filed for specific performance, upon an option given to purchase certain land at any time within a period of four months. For a cash consideration of $500, the optionor gave the option to purchase 80 acres of land within the period of four months, upon the terms and conditions therein set forth. The terms were that on or before October 5th the optionee, if he elected to purchase, should pay the optionor $2,600 in cash, and the balance at certain fixed periods thereafter. The option was dated June 5, 1855. The time expired on the first payment on October 5, 1855. There was nothing said in the contract as to how the option to purchase should be exercised. The evidence showed that Bostwick, after the execution of the agreement and within the period of four months, without paying the $2,600, entered into the premises, which were then uninclosed prairie, and caused the land to be fenced, and some streets to be graded, and some breaking to be done. The position was taken in that case that the action of the optionee showed an election to purchase and changed the option into an agreement for the sale and purchase of the land, binding as such upon both parties, but the Illinois Supreme Court

said at page 143 that: ''These acts of Bostwick undoubtedly indicated his intention to take the land and to make the purchase thereof. But something more than signifying his election to take the land on the terms offered was required on the part of Bostwick, in order to make a contract of sale, or to give him any interest in the lands. His right was only to purchase upon the terms and conditions named, which were: The payment of $2,600 in cash within four months, . . . and the execution of promissory notes for the deferred payments. Bostwick never performed either one of these things, or offered so to do, and so never exercised the right to purchase within the four months, which he enjoyed, which he could only do upon the aforenamed terms and conditions.———We must think that, notwithstanding the making of said improvements, it was still optional with Bostwick whether he would, within the four months, make the purchase, pay the $2,600, . . . or decline to do so.''

In the recent case of *Northern Illinois Coal Corp. v. Cryder,* 361 Ill. 274, 197 N. E. 750, the distinction between the unilateral option agreement and the executory bilateral sale contract which only becomes binding and effective after acceptance of the offer by the optionee in accordance with its terms, is again announced and recognized by the court.

While in that case, which was a suit by the optionee against the optionor, the facts were materially different from the meager facts alleged herein, and it was shown that the optionee had done everything in his power to meet the express terms of the offer; had approved the abstract of title; had paid off a $21,000 mortgage on the land referred to in the option; had procured and tendered the remainder of the purchase price due and made demand for a conveyance of the premises upon the optionor thereunder, who had in the meantime evaded compliance and signed another contract for the sale and conveyance of the land to a

different purchaser, etc., all of which clearly constituted a breach of contract which was held by the optionee and was at all times binding on the optionor under his power of election. Right to redress by specific performance was sustained against the optionor under the particular facts of that case, yet the principle announced therein is applicable to the facts in the instant case in a similar manner as it was applied in the case of *Bostwick v. Hess, supra.*

In the *Cryder* case, the optionor was estopped from denying notice of acceptance on the facts therein shown and the payment and conveyance held to be dependent covenants. The application of the rule necessarily depends upon the particular facts of each case.

The facts in the pending cause fall clearly within the class of cases similar to that of *Bostwick v. Hess, supra,* in which the payment or tender of purchase price or instalment thereof becomes a condition precedent in the acceptance of the option by the optionee.

A careful reading of the opinion in the *Cryder* case discloses the fact that there was no specific provision in the option agreement in that case that the failure to pay the purchase price "shall render this option and contract null and void and that each party shall thereupon be discharged from any and all liabilities or claims arising thereunder," or making the acceptance of the offer dependent upon an advance payment of a whole or part of the purchase price and is clearly distinguishable on the facts from the pending cause.

It is clear that parties may so contract so as to make the option null and void upon certain conditions and when a clause to that effect is expressly provided for in a written option, it must be construed as a part of the whole instrument and cannot be ignored in passing upon its intent and meaning, unless such provision is illegal or contrary to public policy.

The appellant insists, further, that the alleged offer to perform on his part and the failure and refusal of the defendant to make the payment upon the offer of tender constituted (without an actual tender) a waiver of further performance by the plaintiff of the conditions to be performed by him under the contract, and that his right of action thereupon accrued. Under the vague and indefinite allegations of facts and conclusions as to what was done by the respective parties and when the alleged transactions or offers took place we hold that no waiver of lawful tender and continuance of such tender of performance on the part of the plaintiff appears on the face of the declaration.

From the statements of ultimate facts and allegations set forth in the declaration, this court cannot hold that the circuit court was in error in ruling that the same did not state a cause of action and that there had been no sufficient allegations showing an acceptance of the unilateral option which would convert it into a bilateral contract of sale upon which the plaintiff was entitled to recover damages for an alleged breach of contract from the defendant herein.

In view of the holding herein, we need not consider defendant's contention that the alleged cause of action is barred by the statute of limitations. Suffice it to say that it appears from the supplemental abstract procured by the appellant by leave of court on suggestion of diminution of record, which contains the original declaration, shows that the cause of action therein alleged was based upon the written option set out in the second amended declaration, and that the 10-year statutory period for filing the suit had not elapsed when the plaintiff's original declaration was filed herein.

Many points and authorities are set forth in the briefs and arguments of respective counsel which we have fully considered, but we find many of them not in point or not decisive of the points at issue in this case.

From a consideration of the whole of the record it is the opinion of this court that the errors were not well assigned and that the trial court committed no reversible error in sustaining the motion of appellee and rendering judgment in bar of suit against the appellant.

The judgment of the circuit court of Vermilion county will therefore be affirmed.

*Judgment affirmed.*