### Kenton Coal & Oil Co. v. Petroleum Exploration, Inc.

Sept. 26, 1941.

564

H. C. Gillis and R. L. Smith for appellant.

Edward C. O'Rear and Allen Prewitt for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The Kenton Coal & Oil Company brought an action in equity in the Clay circuit court against Petroleum Exploration, Inc., seeking the cancellation of an oil and gas lease executed and delivered to the defendant June 25, 1934, by Gardner Baker and wife and Georgia Campbell and husband, and asking that it be adjudged the owner of all the coal, gas, oil, and minerals and neces-

sary mining privileges in and under a 150-acre tract of land in Clay county; that its title to said minerals be quieted; that it recover of the defendant the value of gas which had been extracted from the land; and for an injunction against further removal of the gas. The defendant's demurrer to the petition was sustained, and, the plaintiff having declined to plead further, its petition was dismissed. From the judgment dismissing the petition, this appeal is prosecuted. The sole question presented is the propriety of the court's ruling in sustaining the demurrer to the petition.

The plaintiff in its petition alleged, in substance, that it was, and ever since April 1, 1903, had been, the owner of all the coal, gas, oil, and minerals in a certain described tract of land situated in Clay county containing 150 acres, more or less; that the land was a part of a tract of land containing 2,000 acres, more or less, in all of which the plaintiff owned the minerals, and which tract was owned on August 5, 1887, by George W. Baker; that the plaintiff acquired title to all of the minerals in all of said land under and by virtue of a deed or title bond, in writing, which was duly signed, executed, and delivered by George W. Baker to W. J. Horsley on August 5, 1887, and by which said George W. Baker conveyed to W. J. Horsley the said coal, gas, oil, and minerals and mining rights and privileges, and the title thereto was thereby vested in W. J. Horsley; and that on February 25, 1891, said deed or title bond was duly ratified, confirmed, and acknowledged by George W. Baker before James Marcum, clerk of the Clay county court. The petition alleged that "a duly certified copy of said deed or title bond is filed herewith as part hereof, marked 'Exhibit A,' " and further, "W. J. Horsley, by deed of conveyance duly executed and delivered by him to this plaintiff, on the 1st day of April, 1903, conveyed all of said coals, gases, oils, minerals and right and privileges so as aforesaid acquired by him from George W. Baker to this plaintiff." Exhibit A filed with and made a part of the petition reads:

"Know All Men by These Presents, That for and in consideration of Ten Dollars, in hand paid today 5th day of August, 1887, I have sold to W. J. Horsley, all the coals, gases, oils, and minerals with customary mining privileges in or on the tract of land or lands situated on the waters of Crain Creek

& Buffalo Creek, in Clay & Owsley Counties, Kentucky, adjoining the land of Thos. Baker, Henry Barrett etc. in Owsley County adjoining lands of Irvin Baker, and others. Containing 2,000 acres more or less, at 50 cents per acre, and I bind myself and heirs to make a good warranty deed for said coals, gases, oils, and minerals, free from dower liens and all incumbrances to the said W. J. Horsley, or his assigns when the money is paid as follows, viz:

"All within six months after above date, balance within six months from first deferred payment or as soon thereafter as good warranty deeds can be made to W. J. Horsley, or his assigns for said coals, gases, oils and minerals and such timber from 10 inches down as may be needed for mining purpose and if not paid in six months from this date in full this is to be null and void.

"Attest: J. B. Jones.
(Signed) Geo. W. Baker."

The certificate of James Marcum, clerk of the Clay county court, attached thereto states that:

"Geo. W. Baker, whose name is signed to this contract (hereto annexed) bearing date 5th day of August, 1887, personally appeared before me, in my said County, and acknowledged the same to be his act and I therefore certify the same for record.

"Given under my hand this the 25th day of February, 1891."

There is considerable dispute as to the nature of the action, but appellant asserts that it is an equitable action to cancel the title of an adverse claimant and to enjoin further acts of trespass under such title and to recover the value of gas which has been wrongfully appropriated by the appellee under an inferior title. Whatever the proper classification of the action may be, it is conceded that the sufficiency of the petition is to be determined by the construction placed upon Exhibit A, the instrument under which appellant claims title. Regardless of the allegations of the petition, the demurrer was properly sustained if the exhibit shows that appellant has no title. Whitaker v. Million, 270 Ky. 708, 110 S. W. (2d) 653; Rounds v. Owensboro Ferry Company,

253 Ky. 301, 69 S. W. (2d) 350; Bates v. Johnson, 217 Ky. 673, 290 S. W. 474; Smith v. Phelps, Ky., 121 S. W. 656. Appellant contends that Exhibit A is either a deed or a title bond and that under it appellant has either the legal or equitable title to the minerals in dispute, while appellee contends that it is either an executory contract of sale or an option which was never exercised. Clearly it was not intended to be a deed. It did not undertake to convey any interest in the land of George W. Baker, who signed it, but merely bound him to make a deed to Horsley if the latter paid a certain amount within six months. Horsley assumed no obligation. It was entirely optional with him whether or not the amount stipulated in the writing was paid. There was no agreement, express or implied, to pay it.

In support of its contention that the instrument signed by George W. Baker is a deed and not an option, appellant cites a number of cases of which Day v. Miles, 204 Ky. 711, 265 S. W. 282, is typical. The contract in that case contained apt language of conveyance, and recited that $200 of the purchase money had been paid. The purchaser bound himself to pay the further sum of $600 within fifteen days from the date of the contract. $400 was paid, leaving $200 of the total purchase price of $800 unpaid. The seller undertook to take advantage of a clause of the contract which provided for a forfeiture if the purchaser failed to pay the balance of the purchase money within fifteen days from the date of the contract. It was held that since the language used in the writing clearly evidenced a contract for the sale of land and since the purchaser was bound by the writing to pay the agreed purchase price, the forfeiture clause did not convert the contract into an option but was in the nature of a penalty for nonpayment. It was further held that the penalty was so harsh that it should be relieved against in a court of equity. The facts in Day v. Miles, supra, clearly distinguish it from the instant case.

Likewise, the writing executed by George W. Baker is not a title bond. There is no mutuality of obligation. What we commonly call title bonds or bonds for title are contracts for the conveyance of real estate. They are not required to be acknowledged but are valid instruments and are enforceable in the courts. Though a title bond cannot take the place of a recorded deed and is insufficient to pass the legal title, it gives the holder an

equitable right superior to the right of a purchaser or creditor with notice. Ferrell v. Childress, 172 Ky. 760, 189 S. W. 1149; Asher v. Tennis Coal Company, Ky., 118 S. W. 955; McGuire v. Whitt, Ky., 80 S. W. 474. The writing relied upon by appellant did not bind Horsley to pay. The payment of the price fixed for the minerals in the 2,000-acre tract, which would have entitled him to a deed, was entirely subject to his election. The writing was not a contract for the purchase of the minerals, but was an offer to sell and granted to Horsley the privilege of purchasing the property if he elected to do so by paying $990 within six months from the date of the instrument. This was no more than an option and a binding contract could not result until the offer was accepted by the optionee according to the terms in which it was made. Stamper v. Combs, 164 Ky. 733, 176 S. W. 178; Murphy, Thompson & Company v. Reed, 125 Ky. 585, 101 S. W. 964, 10 L. R. A., N. S., 195, 128 Am. St. Rep. 259. In Fields & Combs v. Vizard Investment Company, 168 Ky. 744, 182 S. W. 934, Ann. Cas. 1918D, 336, a contract similar to the one here under consideration was involved. On May 25, 1903, Eli Brashear made a contract for the sale of his land to J. C. Heydrick at $6 per acre and acknowledged receipt of $100, payment on the purchase price. On May 26, 1903, William Fields entered into a contract for the sale of his land to J. C. Heydrick at $4.50 per acre, and acknowledged payment of $60 on the purchase price. Each of these contracts contained the following paragraphs:

" 'This contract to be null and void if said land is not surveyed and paid for within twelve months from this date, unless the grantor should fail or refuse to make a good deed, as hereinafter stated.

" 'It is further agreed by and between the parties hereto that the grantee has a right at any time to surrender this agreement upon the payment of the sum of $25.00 which amount grantor hereby agrees to accept as a full consideration for the surrender of this agreement, and the grantee is thereupon released from all liability named in this agreement, and hereby forfeits the sum of $100.00, this day advanced on this contract.' "

On August 6, 1910, the Heydrick contracts were assigned to Fields and Combs, and one of the questions involved in the litigation was: Were the Heydrick con-

tracts valid and in force when assigned to Fields and Combs? In disposing of this question, the court said:

"The Heydrick contracts were for a valuable consideration, and bound Brashear to convey the land to Heydrick, and his assignees, upon demand and payment of the purchase price within one year, but did not bind Heydrick to take the land at any time. These contracts by their express terms, unless exercised within one year from date, were null and void, and were only options to purchase the land at a fixed price for a definite time, expiring on May 25 and 26, 1904, respectively, without force or effect thereafter. No effort was made by Heydrick or his assignees to exercise the option under these contracts for more than six years after their execution, until, on August 6, 1910, appellants procured assignments of them from Heydrick, and notified Brashear they were going to take the property under same. Appellants, therefore, acquired no right under the assignments to them of these contracts."

To the same effect are Smith v. Ballou, 211 Ky. 281, 277 S. W. 286; Asher v. Roberts, 206 Ky. 186, 266 S. W. 1089; Kentucky River Consolidated Coal Company v. Frazier, 161 Ky. 374, 170 S. W. 986.

It is universally held that time is to be regarded as of the essence of options. Fields & Combs v. Vizard Investment Company, supra; Rounds v. Owensboro Ferry Company, 253 Ky. 301, 69 S. W. (2d) 350; Heydrick v. Dickey, 154 Ky. 475, 157 S. W. 915; Waterman v. Banks, 144 U. S. 394, 12 S. Ct. 646, 36 L. Ed. 479. Here there was no contract of sale, executed or executory, but merely an option to purchase on payment of the purchase price within a specified time, which was a condition precedent to the foundation of the contract of sale. Conceding arguendo that the writing was an executory contract to convey, payment of the purchase price was a condition precedent which must have taken place before the title could have passed. The writing concluded, "and if not paid in six months from this date in full, this to be null and void." The writing did not bind Horsley to take the land and pay the price named, but merely bound Baker to sell and convey if Horsley paid in six months. If Horsley elected not to pay within the six months' period, the contract was to be null and void.

Some point is made of the averment in the petition that on February 25, 1891, more than three years after the writing was signed by George W. Baker, it was duly ratified, confirmed, and acknowledged by him before the clerk of the Clay county court. The certificate of the clerk does not state when the writing was acknowledged, and it may be that it was acknowledged on the day it was signed and the certificate added thereafter as is frequently done, but even if the acknowledgment took place on February 25, 1891, its effect, at most, was only to renew and extend the option for another period of six months. It is not alleged, and there is no claim, that Horsley paid the purchase price at any time.

We conclude that no title passed to Horsley by virtue of the writing in question, and that the chancellor properly dismissed the petition.

Judgment affirmed.

Whole court sitting.