608 P.2d 1116

**Gilbert PADILLA and Nora Padilla, Plaintiffs-Appellees,**

v.

**Jean L. ROLLER and Ametex Corporation, Defendants-Appellants.**

**No. 12443.**

Supreme Court of New Mexico.

March 19, 1980.

Mitchell, Alley & Rubin, James B. Alley, Jr., Santa Fe, for defendants-appellants.

Terrance L. Dolan, Albuquerque, for plaintiffs-appellees.

## OPINION

FEDERICI, Justice.

Plaintiffs (appellees), Gilbert and Nora Padilla, brought this action against defendants (appellants), Jean Roller and Ametex Corporation, to quiet title to two separate federal coal leases. Each party filed a motion for summary judgment. The district court granted plaintiffs' motion and denied defendants' motion. Defendants appeal. We affirm the trial court.

Plaintiffs and defendants each claim title and ownership of the same interest in the federal coal leases transferred to them by Florentino Padilla. At all material times, Florentino Padilla was married to Amalia Padilla, and all of their property was community property. All of the original interests in the coal leases were in Florentino Padilla's name alone. The first two transfers to the defendants of the coal leases were from Mr. Padilla in his name alone. The third and last transfer was to his son,

one of the plaintiffs, but it was also signed by Florentino Padilla's wife.

Defendants base their claim upon Mr. Padilla's first two transfers of the lessee's interest in the coal leases and plaintiffs base their claim upon his third transfer.

The question to be resolved on appeal is whether the first two transfers by Florentino Padilla were void under Section 57–4–3, N.M.S.A.1953 [1], for the failure of his wife to sign the transfer documents.

Plaintiffs rely upon that portion of Section 57–4–3, which states:

[A]ny transfer or conveyance attempted to be made of the *real property* of the community by either husband or wife alone shall be void and of no effect . . . (Emphasis added.)

Defendants rely on the language of Section 57–4–3, which reads:

The husband has the management and control of the *personal property* of the community, and during coverture the husband shall have the sole power of disposition of the personal property of the community . . . . (Emphasis added.)

The answer to the question depends upon whether the coal leases in question are the real or personal community property of the Padillas. We hold that the coal leases are real community property, and that Florentino Padilla could not effectively convey them to defendant without his wife's signature.

This Court, since 1922, has consistently held that oil and gas and mineral leases are real property. *Sachs v. Board of Trustees, Etc.*, 89 N.M. 712, 557 P.2d 209 (1976); *Bolack v. Hedges*, 56 N.M. 92, 240 P.2d 844 (1952); *Vanzandt v. Heilman*, 54 N.M. 97, 214 P.2d 864 (1950); *Duvall v. Stone*, 54 N.M. 27, 213 P.2d 212 (1949); *Sims v. Vosburg*, 43 N.M. 255, 91 P.2d 434 (1939); *Staplin v. Vesely*, 41 N.M. 543, 72 P.2d 7 (1937); *Terry v. Humphreys*, 27 N.M. 564, 203 P. 539 (1922).

1. § 57–4–3, N.M.S.A.1953 (repealed by N.M. Laws 1973, ch. 320, § 14, and replaced with §§ 57–4A–1, et seq., N.M.S.A.1953 (Supp.1975)) (current version is found at §§ 40–3–13 to 40–3–14, N.M.S.A.1978).

236

In *Terry*, for the first time, this Court held that an oil and gas lease for a period of five years or as long thereafter as oil and gas, or either of them was produced, conveyed *real property* and required the joinder of husband and wife in the transfer instrument. This was based upon the community property statutes in effect at that time requiring the joinder of husband and wife in conveyances of real property.

*Staplin, supra*, also involved a state oil and gas lease and the question arose as to the status of the property covered by the lease. The Court held that "[a]n oil lease is not what is ordinarily denominated a lease, it is a sale of an interest in land." *Id.* at 545, 72 P.2d at 8.

*Sims, supra*, concerned whether or not a tax sale certificate and deed conveyed the underlying mineral interests. In holding that the purchaser did not obtain title, where the underlying mineral interests had been severed from the land and were neither assessed nor sold for taxes, this Court reaffirmed the notion previously espoused in *Terry, supra,* and *Staplin, supra*, that a mineral deed conveys an interest in real estate.

*Duvall, supra*, involved a grant or reservation of oil and gas and also royalty rights under a mineral lease. In that case, the Court stated that those rights constituted a grant or reservation of "real property."

The *Vanzandt, supra*, case involved a *contract* to execute an oil and gas lease. The Court repeated the settled rule that an oil lease does not create the ordinary relation of landlord and tenant, but rather, conveyed an interest in real property and said "but a contract to execute an oil and gas lease, should be construed as any other contract for the sale of an interest in land." *Id.* at 110, 214 P.2d at 872.

In *Bolack, supra*, the question presented on appeal in the case at bar was raised, namely, that oil and gas leases create only a personal property interest transferable by one of the spouses alone. This Court rejected that argument, stating:

The appellee cites many cases in support of her argument that our former decisions on the subject are erroneous, and should now be overruled and we should hold these oil and gas leases create only personal property, at least until actual production of oil and gas is obtained.
. . .

The oil industry in New Mexico has adjusted itself to the rule announced in the *Terry* case and we do not feel we should now change the rule.

*Id.* at 95, 240 P.2d at 845.

In *Sachs, supra*, the Court determined that, before severance of the minerals and the surface, a complete transfer of the surface included a transfer of the mineral estate. In support of its conclusion as to what constitutes a mineral estate, the Court cites *Terry, supra*, with approval, to the effect that a mineral lease is considered real property in New Mexico.

The terms and conditions of the coal leases in question here are similar to the terms and conditions contained in the leases construed in the above cases. The coal leases granted to the lessee the exclusive right to mine and dispose of the coal for a period of twenty years, together with options to renew for additional successive twenty-year periods, upon readjustment of royalties and terms and conditions at the end of each twenty-year period. The lease also provided for termination by the lessee for reasons stated in the lease.

Since the coal leases in question are community real property, any transfer of those rights was void unless joined in by both husband and wife.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, C. J., and EASLEY, PAYNE and FELTER, JJ., concur.