708 P.2d 307

**Robert S. BARELA, and Viola Barela,
Plaintiffs-Appellants,**

v.

**George B. LOCER, Defendant-Appellee.**

No. 15527.

Supreme Court of New Mexico.

Sept. 4, 1985.

Rehearing Denied Nov. 13, 1985.

Peter F. Lindborg, Eaves, Darling, Anderson & Porter, P.A., Albuquerque, for plaintiffs-appellants.

James E. Womack, Albuquerque, for defendant-appellee.

## OPINION

WALTERS, Justice.

Plaintiffs Robert S. and Viola Barela sued defendant George B. Locer for breach of contract, alleging that Locer had violated a realty purchase agreement containing an option of first refusal to mineral rights in the realty. The trial court granted summary judgment in favor of Locer, but allowed the Barelas to amend their complaint to allege mistake and misrepresentation, and to ask for reformation of contract. After a bench trial, the court entered judgment for Locer. The Barelas appeal and we reverse.

On May 7, 1970, the Barelas, as purchasers, and Locer, as seller, signed a purchase agreement for certain real estate. Under the agreement, Locer retained all mineral rights, but also agreed "to grant to purchaser an option of first refusal to acquire mineral rights on said premises and such option shall survive and be enforceable for a period of one year after death of seller." On June 22, 1970, Locer executed and delivered to the Barelas a warranty deed for the surface rights of the property. The deed reserved to Locer, as grantor, "all minerals of every type, character and description," but made no reference to the Barelas' right of first refusal to acquire mineral rights. The Barelas accepted the deed.

In May 1979, Locer leased to Alex Phillips all of his mineral rights in the realty. The Barelas became aware of the Phillips lease in late 1979. In January, 1981, claiming that the lease to Phillips constituted a breach of their right of first refusal, Barelas sued. Both parties filed motions for summary judgment.

The trial court concluded that the terms of the warranty deed extinguished the earlier purchase agreement provision for first refusal under the doctrine of merger, and granted summary judgment for Locer. At the same time, it allowed the Barelas to amend their complaint to request equitable reformation of contract based on legal theories of mistake and misrepresentation. Following a trial without a jury, the court found that Locer had made no misrepresentations or fraudulent statements and that there had been no mutual mistake of fact. The court concluded not only that the doctrine of merger applied to the right of first refusal, but also that the lease to Phillips did not constitute an acquisition of mineral rights by Phillips. Finally, the court decided that the Barelas had no rights in the subject mineral interests and entered judgment for Locer.

## I. The Purchase Agreement and the Deed

The Barelas argue that their right to have first refusal of the mineral rights did not merge into the subsequent lease, that the mineral lease was indeed a violation of that right, and that they are therefore entitled to damages and reformation of their deed. We agree that the lease breached the agreement between Locer and the Barelas. We discussed the doctrine of merger in *El Sol Corp. v. Jones*, 97 N.M. 645, 642 P.2d 1104 (1982), where a prior agreement that the *buyer* would reconvey the minerals to the seller after a certain period was held to be of no effect because it had merged into the subsequent mineral deed conveying title to the minerals in fee simple absolute, without reservation or reference to the prior agreement. We there stated the doctrine of merger, quoting from *Continental Life Insurance Co. v. Smith*, 41 N.M. 82, 88–89, 64 P.2d 377, 381 (1936), as follows:

In the absence of fraud, mistake, etc., the following stipulations in contracts for the sale of real estate are conclusively presumed to be merged in a subsequently delivered and accepted deed made in

pursuance of such contract, to wit: (1) Those that inhere in the very subject-matter of the deed, such as title, possession, emblements, etc.; (2) those carried into the deed and of the same effect; (3) those of which the subject-matter conflicts with the same subject-matter in the deed. In such cases, the deed alone must be looked to in determining the rights of the parties.

But where there are stipulations in such preliminary contract of which the delivery and acceptance of the deed is not a performance, the question to be determined is whether the parties have intentionally surrendered or waived such stipulations. If such intention appears in the deed, it is decisive; if not, then resort may be had to other evidence.

*El Sol Corp. v. Jones,* 97 N.M. at 647, 642 P.2d at 1106.

Locer contends that his ownership of mineral rights was covered in both the purchase agreement and the deed. He relies on the following language from the *Continental Life* case to assert that the deed's absolute reservation of mineral rights in himself governs the entire transaction and that the right of refusal merged into the deed:

> If convenants regarding the same subject-matter, consistent or inconsistent, [sic] with those in the contract appear in the deed, they are conclusively presumed to have merged therein * * *.

*Continental Life Insurance Co. v. Smith,* at 88, 64 P.2d at 380–381. We note that the quoted material continues:

> but if the deed contain no evidence of intention on the subject, then the question is open to other evidence to determine such intention, and in the absence of evidence there is no presumption that either party intended to waive stipulations in the contract by the delivery or acceptance of a deed.

*Id.* We find the latter language more applicable to the present case.

Although both the purchase agreement and the subsequent deed address the subject matter of Locer's mineral ownership by expressly reserving that interest to Locer, only the purchase agreement refers to Locer's future disposition of any mineral rights. A contract granting a right to refuse a future purchase is not equivalent to a contract of sale; at best, it gives only the right to purchase upon the terms of the agreement. *Keefer v. United Electric Coal Companies,* 292 Ill.App. 36, 10 N.E.2d 836 (1937); *Kenton Coal & Oil Co. v. Petroleum Exploration, Inc.,* 287 Ky. 563, 154 S.W.2d 556 (1941). *See also Master Builders, Inc. v. Cabbell,* 95 N.M. 371, 622 P.2d 276 (Ct.App.1980), *cert. denied,* 95 N.M. 426, 622 P.2d 1046 (1981). *See generally* III *American Law of Property* § 11.-17 (1952).

■ We have stated that "[a]n option to purchase is a contract where the property owner, in exchange for valuable consideration, agrees with another person that the latter shall have the privilege of buying property within a specific time on terms and conditions expressed in the option." *Hueschen v. Stalie,* 98 N.M. 696, 698, 652 P.2d 246, 248 (1982). *See also Northcutt v. McPherson,* 81 N.M. 743 at 745, 473 P.2d 357 at 359 (1970) (option is right of optionee to comply or not comply with option's terms, at sole choice and election of optionee). By contrast, *a right of first refusal* shifts the initiative back to the promisor; the holder of the right has no opportunity to exercise it until the promisor/seller decides to offer up the property for sale. Although denominated an "option," the true nature of the promise in the purchase contract was a bargained-for right of first refusal. For a general discussion of the comparison between a right of first refusal and an option, see 1A *Corbin on Contracts* § 261 (1963).

■ Thus, the nature of an option, and even more so of a right of first refusal, differs fundamentally from an outright sale of fee simple ownership. "A lease with an option to purchase real estate creates no estate in the lessee beyond his leasehold interest." *Hueschen v. Stalie,* 98 N.M. at 698, 652 P.2d at 248. No sale

occurs until the option is exercised in accordance with its terms. *Id.* In *El Sol*, we held that "title to the minerals was the very subject matter of both the agreement and the deed." *El Sol Corp. v. Jones*, 97 N.M. at 647, 642 P.2d at 1106. By contrast, in the present case not only does the provision in the purchase agreement relate to a different subject matter—possible *conveyance* of mineral rights—than does the broad *reservation* of mineral rights in the deed, but the two provisions do not conflict. The deed covers what both parties contemplated concerning the current ownership of the mineral rights. The purchase agreement covered what both parties contemplated would be the Barelas' right if Locer ever decided to convey the mineral rights. The right to acquire the mineral rights could be exercised only at Locer's discretion and the provision relating to future alienation, as expressed in the purchase agreement, was consistent with the seller's ownership of those rights as expressed in the deed. By its terms, the right was enforceable until one year after Locer's death and, thus, was clearly intended to coexist with Locer's ownership interest. *See also Sanchez v. Dickinson*, 551 S.W.2d 481 (Tex.Civ.App.1977). As a consequence, the right of first refusal was not such a stipulation as would be conclusively presumed to have merged in the subsequent deed, under *El Sol.*

■ Moreover, delivery and acceptance of the deed to the surface rights was not a performance of the second part of the purchase agreement which dealt with mineral rights, especially since there was no evidence, contrary to Locer's contention, that the Barelas surrendered or waived the right of first refusal. Relying on its conclusion of merger, the trial court made no specific finding on that matter. Because we disagree with the court's application of merger, it is necessary also to examine the evidence in accordance with the *Continental Life* analysis regarding waiver.

■ The survival clause in the purchase agreement, as well as the following evidence, is insufficient to show any such intent: the absence of any negotiations in the time period between execution of the purchase agreement and the deed; the letter sent to Locer by his own attorney after the deed was executed to remind him that he had given to "Mr. Barela the right of first refusal in case you [Locer] decide to sell your mineral rights"; and the Barelas' offer to purchase the minerals one month before Locer leased the minerals to Phillips. As we have already stated, the grant of a right of first refusal and the deed's subsequent reservation of mineral rights to the grantor are not inconsistent; acceptance of the deed could not indicate an intent by the Barelas to waive their right. The deed was a partial performance of the first of two terms agreed upon in the purchase agreement: the conveyance of the surface rights. The second term of the agreement—the right of first refusal to acquire the mineral rights—was denied the Barelas by the promisor of that term. Under the *El Sol* standards, as well as under contract law, the doctrine of merger does not apply and waiver may not be shown by mere acceptance of the deed. *Corbin, supra.* In the absence of any evidence of waiver or surrender, the right of first refusal stands as part of the initial agreement between the parties, and it was breached by Locer.

## II. The Lease

■ Locer further contends that even if the "option" remains effective, the trial court was correct in concluding that the mineral lease to Phillips did not constitute an acquisition of mineral rights such as would breach the agreement. That assertion makes no sense. "This Court, since 1922, has consistently held that oil and gas and mineral leases are [conveyances of] real property." *Padilla v. Roller*, 94 N.M. 234, 235, 608 P.2d 1116, 1117 (1980) (citations omitted). *See Vanzandt v. Heilman*, 54 N.M. 97, 214 P.2d 864 (1950) (oil lease conveys an interest in real property). Locer discounts *Padilla* and *Vanzandt* by arguing that the specific holdings in those cases were limited to leases of community

property or specific performance disputes only, and contending that a lease of mineral interests is not equivalent to an outright sale of the ownership of those interests. We cannot understand the import of that observation. We have clearly stated that, in general, mineral leases convey a realty interest and, whether it be a conveyance for a term or a deed absolute, a document such as was executed in favor of Phillips does in fact represent an "acquisition of mineral interests" by someone other than the Barelas. That conveyance to someone else was violative of the agreement between the Barelas and Locer. Since the Locer-Barela agreement was unrecorded, Phillips took without notice of the Barelas' rights, and no liability, therefore, attaches to him. But his non-liability has no affect on the facts of Locer's breach and Locer's liability therefor.

Because we now hold that the Barelas are entitled to damages on their breach of contract claim, it is unnecessary to address their equitable contentions of mistake or misrepresentation. The matter is reversed and remanded to the trial court for a determination of damages and entry of judgment against Locer and in favor of the Barelas.

IT IS SO ORDERED.

FEDERICI, C.J., and SOSA, Senior Justice, concur.

RIORDAN, J., dissents.

STOWERS, J., concurs with dissenting opinion.

RIORDAN, Justice (dissenting).

In this case the Barelas entered into a purchase agreement with Locer May 7, 1970, to purchase the property in question. It has the following language in the agreement:

> Seller also agrees to grant to purchaser an option of first refusal to acquire mineral rights on the said premises and such option shall survive and be enforceable for a period of one year after the death of seller.

Locer did not grant Barelas this option of first refusal. The deed of June 22nd 1970 contains this language:

> [R]eserving unto the Grantor, his heirs, executors, administrators and assigns, all minerals of every type, character and description, including oil, gas and hydrocarbons, in the above described lands.

Barelas accepted the deed and did not allege an interest of any kind in the minerals until eleven years later when gas wells were drilled and producing, at which time Barelas filed suit. As it turns out, Locer only owned 50% of the mineral interests at the time he sold the surface rights to Barelas. He had sold the other 50% prior to 1955. He never has sold the remaining mineral interests.

Until now, in New Mexico we followed the doctrine of merger. As pointed out in *El Sol Corp. v. Jones*, 97 N.M. 645, 642 P.2d 1104 (1982):

> Under the doctrine of merger, we must look only to the deed to determine the rights of the parties.
>
> Since the deed conveys title in fee simple absolute without reservation or reference to the prior agreement, the prior agreement to convey between the same parties cannot be introduced to vary or contradict the title conveyed by the deed.

This case is much stronger than *El Sol* in that the deed from Locer to Barelas that conveyed the interest in question, specifically excluded the mineral rights. What else could Locer do to reserve the mineral interest he owned?

Even if there were no merger as a matter of law, the most that could arise would be a question of fact as to what the parties intended by the language of the purchase agreement. In that regard, the court made two findings of fact that are adequately supported by the testimony.

13. At any time material to this action, Defendant made no negligent misrepresentations, misrepresentation or fraudulent statements to the Plaintiffs herein.

14. That no mutual mistake of fact was encountered or existed at any time be-

tween the Plaintiffs and the Defendant relative to this action.

Findings of fact supported by substantial evidence are not disturbed on appeal. *In re Valdez*, 88 N.M. 338, 540 P.2d 818 (1975). It is not the appellate function to weigh evidence, or substitute its judgment for that of the trial court. *Getz v. Equitable Life Assurance Society of United States*, 90 N.M. 195, 561 P.2d 468, *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977).

This case is going to unsettle a great deal of law in New Mexico. The majority neither overrules or in my view distinguishes *El Sol*, so it continues to be the law to apply to cases in New Mexico, except this one. I believe that both the facts and the law support the trial court's decision.

STOWERS, J., concurs.